# SMITH v. LEAVITTS.

1. The sheriff made a levy on property to which a claim was interposed, under the statute, by a third person, and upon the trial, the plaintiff in execution was *non suited*, and the property directed to be restored to the claimant, which judgment was afterwards reversed by the Supreme Court. The sheriff being afterwards proceeded against by motion, for failing to make the money—Held that he was protected by the judgment of the court though erroneous, in delivering up the property.

2. When the sheriff is permitted to amend his return, the amendment has relation to the time when the original return was made.

3. When a claim is regularly interposed, the taking of an irregular, or insufficient bond by the sheriff, will not invalidate his return, that the sale has been stayed by the interposition of a claim; nor will it be dismissed for this cause, unless the claimant refuses to execute a sufficient bond and a judgment in such a case in favor of the claimant, though erroneous, will protect the sheriff against a rule for failing to make the money from want of proper diligence, but he must be proceeded against upon his official bond, or by action on the case for neglect of duty.

4. When a sheriff justifies his refusal to make a levy, or his restoration of the property after a levy has been made, upon the ground that the defendant had transferred the property, he assumes the burden of proving that the

transfer was *bona fide*, and effectual in law, for the purpose for which it was made.

5. The necessity of the assent of the preferred creditors, in a deed of assignment, made by an insolvent, to validate the deed, is not an open question in this State. Such assent is necessary to the validity of the deed of assignment, by one not insolvent, when the creditors are placed in a worse condition, by having the collection of their debts postponed beyond their maturity.

6. When a deed of trust is made by an insolvent to trustees, for the payment of his creditors, and on the same day, a power is executed by the trustees to him, giving him full power over the trust effects—*Quere?* if this is one act, or if, when the assignment was made, it was understood or agreed that such authority was to be conferred on the grantor, is it not of itself evidence of a fraudulent intent.

7. When the trustees permit the assignee, as their agent, to use and control the assigned effects, in a manner wholly inconsistent with the purposes of the trust, and as his own, it is evidence that the assignment was not made in good faith.

Error to the Circuit Court of Coosa.

RULE by the defendants in error, against the plaintiff, as sheriff, suggesting that by due diligence he could have made the money on a *fi. fa.* of the plaintiff, against one Jeremiah M. Friou, which was returned on the 1st February, 1840.

From a bill of exceptions it appears, that the plaintiff having made out a *prima facie* case against the sheriff, he then offered in evidence a deed of assignment, executed by the defendant in execution, on the 23d March, 1839, to A. B. Dawson and S. Friou, conveying to them the property levied on by the plaintiff in execution, and also other property, in trust to pay certain creditors therein named. These debts consisted of bills of exchange, and promissory notes, and of some of these, the consideration was proved. He also read in evidence a paper, purporting to be a power of attorney, executed by the trustees to the defendant in execution, bearing the same date as the deed of assignment, by which they constituted him their attorney in fact, and authorized him to sell the lands, goods, wares and merchandize, in such manner, and to such persons, as he should think proper, and

also to sue for any debt conveyed to the assignees, or to compound or arbitrate the same.

The deed of assignment conveyed to the trustees a stock of goods, the books, accounts, &c.; also certain real estate, slaves, &c. The deed directs certain enumerated judgments and other creditors to be paid first, and the residue to be distributed rateably among all the creditors not provided for, who shall within twelve months release the assignor from all liability, and the residue, if any, among those creditors who may refuse to sign such releases. The deed further contains a power of attorney to the trustees, irrevocable by the assignor, to sue for, collect and compound, &c. the debts, &c. and confers on them authority to appoint such agents as may be necessary to assist them in collecting the debts, making sale of the goods, &c.

It was in evidence by a witness, that on the day of the date of the deed, he was employed as a clerk to aid in the sale of the goods, having previously been a clerk in the store. That the stock of goods, and other property, independent of the notes and accounts, were worth about $10,000—that J. M. Friou professed to exercise control, over the property, only as a hirer of the slaves, and house and lot, and as the agent of the trustees; that whilst witness remained in the store, he kept the cash account, and had the custody of the money arising from the sales, and on leaving the store, in July, 1839, paid over $1500 to J. M. Friou, taking his receipt therefor, as agent of the trustees, and that he continued in possession of the property until his death, in 1841, when the goods and other property were sold at public auction. It was also proved, that J. M. Friou appeared to exercise the same control over the property, after the assignment as before; that he appeared to have money to answer his purposes, and in the winter of 1839-40, left Tuscaloosa with a large amount of gold, in a bag, witness thought several thousand dollars, and whilst there, indulged freely in wine, gambled, and was extravagantly dressed.

It was also proved, that J. M. Friou paid several of the debts provided for in the deed, one for $307, due J. Williams, also the claim of Hallett & Brown—that J. M. Friou said, that they had done him personal favors, and he was de-

termined they should be paid, and that S. Friou had settled a debt due the Bank at Montgomery, by assuming the balance due.

It was proved that S. Friou was the brother of J. M. Friou, had been a clerk in the store previous to the deed of assignment, and was but nineteen years of age when the deed was made. It was further proved, that the trustees had paid about $900 in costs. A witness also proved, that Dawson, the trustee, drew on J. M. Friou, to pay a debt he owed the witness of $200, in goods in the store, and that he refused to pay it, unless he would allow twenty-five per cent. on the marked cash prices.

The defendant then read in evidence an order, or judgment of the circuit court of Coosa, made at the fall term, 1840, upon a trial of the right of property, between the defendants in error, as plaintiffs in execution, and the trustees in the deed of assignment, as claimants, as follows:

"Came the parties by their attorneys, and the said plaintiffs declined to make up an issue to try the right of property levied on by them, under direction of the court, and on the same being tendered by the said claimant, or in any manner to prosecute the said levy further, it is therefore considered by the court, that said plaintiff in execution be non-suited, that the goods levied on be restored to the said claimant by the sheriff, and that said claimants recover of said sheriff, their costs, for which execution may issue." This evidence the court rejected, on the objection of the defendant, because the sheriff had not proved the interposition of a regular claim, except by the amended return of the 12th Sept. 1840, to which the defendant excepted.

Plaintiffs proved that they had given a good bond of indemnity to the sheriff, and had instructed him not to levy on the house and slaves. It was in proof, that J. M. Friou was largely indebted at the time of the making of the deed—that suits were pending, on which judgments were afterwards taken, among which was the judgment of plaintiffs. It was in evidence that some of the creditors provided for in the deed had assented to it.

The court gave a number of charges, those now objected to, are, in substance—

That fraud is sometimes a question of law, sometimes of fact—of law, if the jury believe from the evidence, that any of the creditors mentioned in the first class, were placed in a worse condition by the assignment than if it had not been made, that then their assent to the deed was necessary to its validity, and if no such assent were given, the deed was fraudulent and void.

That the deed was void if executed with the intent to delay and hinder creditors, and in coming to a conclusion on this point, they might consider circumstantial, as well as direct evidence, and may consider the subsequent acts of the parties as evidence of their intent.

The defendant's counsel then moved the court to charge, that to invalidate the deed for fraud, the act must relate to the execution of the deed, which the court refused, except as qualified by the charge previously given. To all which the defendant excepted, and which he now assigns as error.

MORRIS and S. STORRS, for the plaintiff in error.

1. Smith, the old sheriff, is entitled to the benefit of the acts of Campbell, his successor. If he is charged with his defaults, he has a right to avail himself of his legal acts.

2. A claim to property, irregular in its inception, may become valid by the subsequent acts of the court and parties. [Leavitts v. Dawson and Friou, 4 Ala. 385 ; Bradford v. Dawson, 2 Ala. R. 203.]

3. Lockhart v. Graham, 8 Ala. 19, says, that a trial of the right of property, under the statute, is like any other suit as to the question of parties. The plaintiff in the trial below, by suffering the goods to be ordered into the hands of the claimants, and other unequivocal acts, affirmed the legality of the claim, and the title of the claimants to the property levied, thereby influencing the subsequent acts of the defendant, he is now estopped from disaffirming the title of the property or acts of defendant. [Orange Co. Bank v. Dubois, 21 Wend. 353 ; 2 Cowen & Hill's Notes, 200 ; Salem Bank v. Gloucester Bank, 17 Mass. 1 ; Wyatt v. Marquis of Hertford, 3 East. 146 ; Straton v. Rastal, 2 Term R. 366 ; 1 Greenl. Ev. 241.]

4. By the acts above referred to the presumption legally a-

rises, that the subsequent conduct of defendant was influenced.

5. The order in court, directing the disposition of the levy, is conclusive on parties and privies, as to the validity of the claim and title of the property. If the court below determined the claim valid, it is sufficient for the protection of the sheriff as to his acts, until such determination be reversed. The court had jurisdiction of such matter. [Mobile Cotton Press & B. Co. v. McGehee, 9 P. 679; 46 Law Lib. 226.] Rule relaxed as to liability of sheriffs in such cases. [Powell v. Governor, use Patterson, in manuscript; Garey v. McCown, 6 Ala. R. 370.]

6. If the action of the court below, or the admission of the plaintiff, or in the execution of a voidable precept, would protect the sheriff in an action of trespass for seizing the goods, it is a good defence for him here. [Watson v. Watson, et al. 9 Conn. 140-45-6-7; Parmalee v. Hitchcock, 12 Wend. 96.]

7. the direction of an issue to be made up, by the court below, presupposed a valid claim, in so far as said court can determine—and all acts done by the sheriff under such adjudication are legal.

8. The deed is valid without the assent of creditors. [Hodge v. Wyatt, June term, 1846; 2 Story's Eq. § 1036.] Consequently, what is said in the fourth charge about the assent of creditors is error—1st, for reasons above. 2d, because it refers to the first class of creditors, which does not include plaintiff. As to assent of a portion of creditors, see Copeland v. Wheeler, 8 Greenl. 411; Boyton v. Moore, 11 Pick. 363; Everett v. Walcott, 15 Pick. 94; Halsey v. Whitney, 4 Mason, 217.] And where there is a stipulation for a release assent of creditors will be presumed. [Niolin v. Douglass, 2 Hill Ch. 443.] As to validity generally, and consent of creditors—2 Kent's Com. 533, and cases there cited; Roberson v. Rapaley & Smith, 2 St. 86; Gazam v. Pointz, 4 Ala. Rep. 382; Ashurst v. Martin, 9 P. 566; Green v. Waterman, 11 Wend. 187; Pope v. Brandon, 2 S, 401.

9. The fourth charge is erroneous, because it refers the construction of the deed of assignment to the determination of the jury. [Pistole v. Street, 5 P. 64; Embree v. Craig; 1 Ala. R. 607.]

13

10. The court evaded the last charge asked. It should have been given or refused. The 7th charge to which the court refers, does not respond to the one asked—and was calculated to mislead the jury. [Rives & Mather v. McLoskey, 5 S. & P. 330 ; Maynard v. Johnson, 4 Ala. 116.]

J. W. PRYOR, contra.

The plaintiff in error cannot complain of the judgment, as upon the whole record it is right. The court might have assumed the truth of all the evidence offered by the defendant below, and on such assumption the court would have been bound to tell the jury that the preferred creditors had never assented to the deed ; and further, that the deed from all the circumstances, was fraudulent and void as to the plaintiffs.

2. The plaintiff in error cannot complain of the judgment, because it is right. He ought not to have been allowed to prove that the property levied on was not the property of the defendant, Friou.

3. If the question as to the assent of the creditors ought to have been decided by the court, yet the court should have decided in the way the jury were told they might find ; for the deed is not favorable to the creditors provided for, but puts them in a worse condition than they were in before the deed was made.

4. But the question whether the assent of the creditors would be presumed, was properly left to the jury. Whether creditors assent or dissent, must depend very much on the character of the trustee, and therefore on facts and circumstances dehors the deed. Not a question therefore of *construction*, but of the intent of parties who have not joined in the deed, and their intent depends upon *collateral facts* on which the jury must decide.

5. The assent of preferred creditors ought not to be presumed until some foundation is laid upon which such presumption may rest—such as notice to the creditors, receipt of dividends by them, or some other equivalent acts, &c.

6. The assent of creditors ought not to be presumed until the assigned property was held at the will of the creditors.

7. No deed necessary to convey personal property, and the

Smith v. Leavitts.

execution of the deed has no other effect than that of a mere parole conveyance. A parol conveyance to one for the benefit of a creditor will not be operative as against other creditors, until the creditor provided for has assented to the conveyance.

8. The deed, until assented to, was a mere power to the trustee, and revocable by the grantor, and so long as he could have revoked or recalled the deed, the property was liable to be levied upon by execution in favor of other creditors.

9. The court properly excluded the order of court of fall term, 1840. The liability of plaintiff in error to defendant was *perfect and complete* at March term, 1840, on the return of the execution, and no subsequent acts of the court, or the parties—the plaintiffs below not assenting thereto—could divest this perfect right of the plaintiff to recover of defendant.

10. Plaintiff's attorney instructed the sheriff to levy the execution, and at the same time fully indemnified him, and further, refused to prosecute the claim cause, on the ground that there was no proper claim interposed. These things were a distinct warning to the sheriff, that he would be held accountable, &c.

11. The law arising on the instruction asked by the plaintiff in error, has no application to a case like this, but applies only to questions arising between the *parties to the deed*—when one alledges imposition against the other in the execution of the deed.

12. The deed was fraudulent and void as to the plaintiffs —1. Because the deed was made to delay and hinder the judgment creditors named in the deed. The delay and hindrance are the *direct effect of the deed on the claims of these creditors.* If the *the delay were the mere result of a preference for other creditors*—such preference being lawful—the delay would not be fraudulent. But *the very act, while it professes to secure the judgment creditors,* delays and hinders them, and this intent appears on the face of the deed. 2. Because the provision that twelve months should be allowed for the second class of creditors to come in. This was so long a term as to be unreasonable, and conclusive evidence of fraud.

ORMOND, J.—When this case was here at a former term, 7 Ala. 175, the points determined by this court were, first, that the institution of a claim to the property levied on by third persons, which was dismissed, was not a bar to a proceeding by the plaintiffs against the sheriff for his neglect in failing to make the money. Second, that the plaintiff in error, (Smith,) having begun to do execution, upon the *fi. fa.* could not shelter himself from liability, by showing that he had turned over the writ to his successor. Third, that when the defendant is in possession of property, which the sheriff fails to levy on, it devolves on him to show, that it is not subject to levy ; and lastly, that although a levy be actually made, the sheriff may justify the return of the property to the defendant in execution, by showing that it belongs to another. These questions, thus settled, must be considered as the law of this case, not open again to inquiry.

At the last trial of the cause, it appears the sheriff offered to prove, that at the fall term, 1840, of the court, upon a trial of right of property between the present defendants in error, as plaintiffs in execution, and Dawson and Friou claimants, under a deed of trust executed by the defendant in execution, by the judgment of the court, the plaintiffs in execution were *non-suited,* and the goods levied on by the sheriff ordered to be restored to the claimants. This testimony the court rejected, because the sheriff did not prove, that the claim was regularly interposed, except by his amended return.

It is perfectly obvious, that this question was not passed upon by this court, when the case was last here, and is now open upon this record, we therefore proceed to its examination.

Our statutory proceeding to try the right of property levied on by execution, to which title is asserted by a third person, was designed to prevent the sale of property thus circumstanced, by the sheriff, until the right could be ascertained by a trial between the person claiming it, and the plaintiff in execution. When the affidavit is made, and the bond executed and tendered, which the statute requires, the sheriff has no option, but must deliver the property he had levied on to the claimant, and if the proceeding is conformable to the sta-

tute, it is a full, and complete justification of the sheriff, in delivering up to the claimant, the property he had previously levied on.

In this case, for some reason which does not appear, it seems that the sheriff had retained the possession of the property levied on, although he had returned that a claim had been interposed, and bond given to try the right, and the court upon non-suiting the plaintiff in execution, directed the property to be delivered to the claimants. The judgment of *non-suit* was held to be erroneous, and was reversed by this court. [Leavitts v. Dawson and Friou, 4 Ala. 335.] But until this judgment was reversed it was obligatory and binding on the parties to it. Upon the dismissal of the claim, which was the effect of the erroneous judgment of the court, the claimants were entitled to a restoration of the property levied on, nor was there any authority in the sheriff to hold it. If the plaintiffs desired to prevent this result, they should have superseded the judgment by writ of error bond; not having done so, the reversal of the judgment by this court, cannot prejudice the sheriff, who had not the power to prevent the property from passing into the hands of the claimants, and who could have been compelled by an attachment to restore it. It is a rule of universal application, that rights acquired by third persons, under a judgment of a court having jurisdiction to render it, are not affected by a reversal of the judgment. [Boren v. McGee, 6 Porter, 432.] This rule applies with full force to the sheriff in such a case as this. He is not only a stranger to the judgment, but being an officer of the court, could have been compelled by an attachment to execute *its* mandate.

The reason assigned by the court, for not giving the sheriff the benefit of the rule in this instance, is, that he did not show, except by his amended return, that the claim was regularly interposed. If the claim was not interposed until after the return day of the writ, or from any other cause was invalid, it should have been disregarded by the sheriff, and would be no protection to him. The interposition of a regular claim, was not, as it appears, shown by the return first made by the sheriff, but when the court permitted him to amend it, the amendment had relation to the time when the

return should have been made; the amendment being allowed to show the truth of the case. It is possible, the court in its judgment may have had reference to the fact, that the sheriff took an insufficient bond, from the claimant, but this did not invalidate his return, which, notwithstanding the insufficiency of the bond, was true in point of fact, that the execution had been stayed by the interposition of a claim to the property.

When an irregular, or insufficient bond is taken by the sheriff, the plaintiff may object to it, but the claim will not be dismissed for this cause, unless the claimant refuses to execute a sufficient bond. This is decisive to show, that if the claim is in other respects regular, the fact merely, that the bond is irregular, or insufficient, does not invalidate the claim. But the taking of an irregular, or insufficient bond by the sheriff, is an act of negligence, or breach of official duty, for which he is responsible to the plaintiff, if he sustains injury thereby, in an action on the case, or upon his official bond. Notwithstanding however such is the fact, the sheriff may defend himself under the judgment of the court, in delivering up the property according to its mandate. This results necessarily from the fact, that the claim suit was pending, and was decided in favor of the claimant. This judgment is a full answer to this proceeding, under the statute for failing to make the money, when by due diligence it could have been made. The summary remedies given by our various statutes against sheriffs for neglects, or defaults, must be confined to the precise facts, which authorize the remedy attempted to be enforced. It is not sufficient that the mischief is the same. Thus, in the case of Garey v. Mc-Cown, 6 Ala. 370, it was held that such a motion as this could not be maintained against the sheriff, who had taken insufficient security upon a forthcoming bond, and was thereby prevented from making the money by the return term of the writ. So at the present term, in Hodges v. Laird, we held, that a motion would not lie against a sheriff, for a fine of five per cent. per month, for not paying over on demand the money which he had collected, unless he had in fact collected it under the execution; and this notwithstanding he had promised the plaintiff to pay it, and had made a return

which he was afterwards permitted to amend, from which it might have been inferred that he had made the money. All the decisions of this court, from its earliest organization, establish, that in proceedings under these statutes, for the enforcement of summary remedies against sheriffs, the plaintiff must bring himself within the letter, and surely there is a broad and plain distinction, as it respects the demerit of the sheriff, between his total neglect to make the money when it was in his power to do so, and his failure to do so, from a mistake or omission in taking a bond for trial of the right of property. These summary remedies are either penalties, or in the nature of penalties, recoverable in certain specific cases; for all other defaults or omissions by the sheriff, redress must be sought by action on the sheriff's official bond, or by an action on the case.

We have taken no notice of the fact, that the bond was taken by the successor in office of the plaintiff in error. Having begun to do execution on the writ in his hands, it was his duty, and not that of his successor, to complete it; as to this execution he still continued to be sheriff. The acts of his successor, being done by his direction, and for which he is responsible, must be considered as having been done as his bailiff, having been done on his behalf. The fact therefore, of his office becoming vacant, whilst the proceedings under the levy were in progress, may be laid entirely out of view, having no influence whatever upon the present question.

The remaining questions in the cause arise out of the deed of assignment, offered in evidence by the sheriff. This deed by which the defendant in execution conveyed all his property to two persons in trust for the payment of his creditors, was offered by the sheriff to prove property in a third person, which, when this cause was previously here, it was held the sheriff might do, notwithstanding he had made a levy, and subsequently in Mason v. Watts, 7 Ala. 703.

This deed is an ordinary assignment by the defendant in execution, conveying all his property to trustees for the payment of his creditors, giving a preference to certain classes, and exacting releases from others. It shows upon its face, that it was made in prospect of insolvency, and the proof establishes that fact beyond all doubt.

This is such a conveyance of the property, as may be a justification to the sheriff in refusing to make a levy, or in restoring the property after a levy had been made. To be a justification for him, it must be a valid transfer of the property, and in justifying under it, he assumes the burden of proving that the deed is *bona fide*, and effectual in law for the purposes for which it was made.

It is now insisted that the assent of the preferred creditors was necessary to the validity of the deed, if they were placed in a worse condition by the assignment, than they would have been in if the deed had not been made, and to this effect the court charged the jury.

Though we yield our assent fully, to the force of the argument of the defendant's counsel on this point, we are constrained to say, that it is not an open question in this State. From a very early period in our judicial history, such assignments as this, have been upheld, if valid, in other respects, from the presumed assent of the preferred creditors. This has been so long acquiesced in, has entered into so many kindred questions, and has become such a fundamental principle of our law, that it requires the action of the legislature to overturn it.

In Elmes v. Sutherland, 7 Ala. 266, and in several subsequent cases, this doctrine of the implied assent of creditors to a deed, making provision for the payment of their debts, is explained and limited, to those cases where there is a reasonable presumption of such assent; as where one insolvent, makes an assignment preferring certain creditors, and does not apply, where one not insolvent attempts to postpone the creditor in the collection of his debt. The doctrine here stated, of implied assent, is for the benefit of the creditor, which he may, if he thinks proper, decline to assert; but such refusal would not render the deed invalid as to other creditors, who did desire to claim a benefit under it. It would, if valid in other respects, be a security for them, subject to the rights of other creditors, notwithstanding the refusal of one or more of the preferred creditors, to avail themselves of it. In a word, the effect of a refusal by a preferred creditor, to take under the deed, would be the same as if he had been omitted out of it. If all should refuse, the deed

would doubtless be wholly inoperative. It follows, that the court erred in deciding that the deed was fraudulent and void on this ground. It is however urged, that if the court erred in this particular, it worked no prejudice, because the deed is fraudulent on its face.

We are not prepared to say, that the deed is void in judgment of law, by an inspection of it, but the manner in which the trust was executed strongly indicates a fraudulent intent in making the deed. The facts disclosed upon the assignment itself, and by the proof, are, that J. M. Friou, a country merchant, being greatly embarrassed, with judgments about being obtained against him, executed the deed in question to S. Friou, his brother, a minor, and then a clerk in his store, and one Dawson, as trustees, by which he conveyed to them all his property, consisting of a stock of goods, debts due to him, a house and lot, and certain slaves; and gave them the most ample powers, authorizing them to sell the goods for cash, or on credit, as they thought proper, to collect the debts, &c. for the purposes of the trust. On the same day the deed was executed, the trustees executed to the grantor a power of attorney, by which they appointed him their agent, to sell the goods, collect the debts, compound with the debtors of the concern, &c. vesting in him the most ample powers.

If these deeds can be considered as one act, we should be strongly inclined to think, it would of itself be conclusive evidence of a fraudulent intent, as it would, in effect, be the same thing as if this power had been reserved in the deed itself. It is difficult to suppose, that the reservation of such a power over the conveyed property, could have been designed for any other than a fraudulent purpose; and it is manifest that its inevitable tendency would be, to render the provision in favor of creditors illusory. In the language of this court, in Ashurst v. Martin, 9 Porter, 576, such an arrangement would, so far as the debtor is concerned, deprive an assignment of all its terrors, and virtually give him the control of his property in defiance of his creditors.

The conduct of this agent of the trustees, was such as might have been expected. He remains in possession of the

14

house and lot, and slaves, by a contract with the trustees. He controls the assigned effects, in the same manner as before the assignment. He receives the money arising from the sales of the goods, and payment of debts, directs which of the preferred creditors shall be paid, has possession of large sums of money, and is shown to have been profuse in his expenditure. The only change which appears to have been effected by the deed, is that the creditors are prevented from interfering with the property. It also appears, that Dawson, one of the trustees drew an order on the trust fund, for the payment of his individual debt, which the assignor agreed to pay out of the assigned effects, at an advance on the cash price. But a small portion of the debts secured by the deed are shown to have been paid, and to sum all up in a word, the grantor remained in possession of the assigned property, controlling and using it as his own until his death.

These facts clearly establish the want of good faith in this entire transaction, and show that the assignment was a device to defraud creditors, and through that medium to give the debtor the control and enjoyment of his property. But although these are the necessary inferences from the facts, the jury could alone draw them, as they alone could determine the existence of the facts.

For the error of the court, as shown in this opinion, the judgment must be reversed, and the cause remanded.