THE GOVERNOR, use &c. vs. CAMPBELL et als.

1. Where a deed of assignment is beneficial to creditors, their assent will be presumed.

2. If a deed of assignment is not fraudulent on its face, a charge, which affirms that proof of its execution and due registration and of the *bona fides* of the debts secured by it raises the presumption that it is not fraudulent in fact, is not erroneous. Such charge is in effect but an affirmance that it is not fraudulent on its face.

3. A sheriff cannot be held liable for failing to make the money on an execution, if the defendant, during the time the execution was in the sheriff's hands, had no property in his possession, unless it be shown that he was the owner of property, which could have been levied on, and of which the sheriff had notice; but if the defendant, during such time, was in the possession of property, and the sheriff, without resorting to the steps necessary to protect himself from liability, returns the execution unsatisfied, he assumes the burden of showing that the property was not subject to the execution, and unless he does so, must be held liable to the plaintiff.

4. A deed of assignment for the benefit of creditors is not vitiated by the fraudulent intent of the grantor alone.

5. The validity of a deed of assignment for the benefit of creditors cannot be affected by the subsequent unauthorised acts or admissions of the grantor, nor of the trustees, when they have no beneficial interest in the property.

6. If two persons be in the joint possession of property and one alone has the title, the law will refer the possession to the title.

7. A party cannot be heard to complain of an error which could not have operated to his prejudice.

8. The rule in regard to the relevancy of testimony is, that facts and circumstances, which, when proved, are incapable of affording any reasonable presumption or inference in reference to a material fact or inquiry involved in the issue, cannot be given in evidence.

9. A reason for doing an act, when the reason is founded on a rumor, is not admissible in evidence.

Error to the Circuit Court of Montgomery. Tried before the Hon. Geo. W. Stone.

THIS was an action of debt by the plaintiff in error against the defendants in error on the official bond of William J. Campbell, late sheriff of Coosa county, to recover the amount due on an execution in favor of David Wheeler against one Jeremiah

M. Friou, which execution was placed in the hands of said Campbell on the 1st day of October 1840, returnable to the spring term 1841, of the Circuit Court of said county, and upon which it is suggested that Campbell could have made the money by due diligence, but failed to do so. There were several exceptions taken to the ruling of the Circuit Court in regard to the exclusion of testimony, all of which will be understood by reference to the opinion. The evidence adduced on the trial by the plaintiff tended to show that said Friou, during the time the execution was in the sheriff's hands, was in possession of property sufficient to satisfy the debt. The defendants offered in evidence, after proof of its execution, a deed, executed by said Friou on the 23d day of March 1839, and duly recorded, by which he conveyed all the property of which he was possessed, consisting of a stock of goods, debts, slaves and lands, to A. B. Dawson and Samuel Friou, in trust to pay various creditors in full, and after their payment, to divide the residue of the money arising from the sale of the property conveyed among such of the other creditors of the grantor as should in twelve months accept the provisions of the deed and release him from their demands, and if anything should remain, after paying off this second class of creditors, to distribute it rateably among those who should have declined to accept. The defendants then proved that the debts of the prefered creditors were *bona fide* and subsisting debts due by the grantor; that some of them were paid out of the trust fund in part, and one or two in full, and that some of the creditors of the second class accepted the deed. There was testimony tending to show that the grantor, after the execution of the deed, by virtue of a power of attorney from the trustees retained possession of the effects, and that he exercised the same control over them that he did before the assignment was made; that he remained in possession of the slaves, disposed of the goods, compounded the debts, and used the money arising from the sales of the goods and collections of the debts extravagantly and without restraint from the trustees; that after the grantor's death, the lands and slaves were sold to a friend of the grantor's wife for a small sum compared with their value; and that some of them were secretly carried out of the State by Samuel Friou, one of the trustees, who was quite a young man, a brother of the grantor, and with-

out capital. There was other testimony detailing facts and circumstances conducing to show fraud and that there never was in fact any change in the possession of the property, but as to this point it was conflicting. The court charged the jury:

1st. That they must presume the assent of the prefered creditors in the deed as it was favorable to them.

2d. That the deed was not fraudulent on its face.

3d. That the proof of the debts secured by the deed, and of its execution and registration, raises the presumption that the deed was not fraudulent in fact, until the facts and circumstances given in evidence destroy that presumption.

4th. That if the defendants had proved the execution of the deed, and that the debts named in it were *bona fide* and the deed recorded at the proper time, then Campbell and his securities were not affected by any secret trust intended for the benefit of J. M. Friou, unless the jury were satisfied from the evidence, that Campbell knew of the fraudulent intent on the part of the parties to the deed.

5th. That if J. M. Friou intended to delay, hinder, and defraud his creditors, but the trustees and the prefered creditors did not join in that intent the deed was valid.

6th. That if the deed was made without any intent to delay, hinder, and defraud creditors, no subsequent acts or intents of the grantor or trustees could destroy it, so as to make the property liable to execution against Friou, unless acquiesced in by the creditors.

7th. That if J. M. Friou and Samuel Friou were both in possession of the property after the execution of the deed, the law would refer the possession to the title and would presume the trustee in possession, if he had by virtue of the deed the legal title.

8th. That if the jury believed that the deed was executed with a fraudulent intent on the part of the grantor and the trustees, the deed was void as against creditors, unless the proof showed an express assent to it on the part of the prefered creditors, and the result would be the same, if all the debts secured by the deed were *bona fide*.

A charge was asked by the plaintiff and refused, which as it was not assigned as error, it is unnecessary to insert. To the several rulings of the court in the exclusion of evidence, and to

each of the charges given the plaintiff excepted, and now assigns them as error.

PRYOR, for the plaintiff.

BELSER & HARRIS, and ELMORE & YANCEY, for defendants.

DARGAN, C. J.—That the law presumes the assent of creditors to a deed of assignment executed by an insolvent debtor, when the conveyance is beneficial to them, is now so well established by the decisions of this court, that the question is not open to controversy.—Robinson v. Rapelye, 2 Stew. 86; Wiswall v. Ross et al. 4 Porter, 321; Gazzam v. Pointz, 4 Ala. 374; Kennard v. Thompson, 12 Ala. 487. In the case of Smith v. Leavitt, 10 ib. 92, the deed, out of which the controversy in this case grows, was before this court, and it was held not to be fraudulent on its face, and the provisions such, that the assent of the prefered creditors would be presumed. This decision fully shows that there is no error in the first and second instructions given to the jury.

2. The third charge is equally free from error. It merely affirms that the execution of the deed, its registration, and the proof of the debts intended to be secured by it, raised the presumption that the deed was not fraudulent in fact, until that presumption was overcome by evidence. This charge amounts to nothing more than that the deed was not fraudulent on its face, and that it required evidence, dehors the deed, to show it to be fraudulent; for it is manifest that if proof of the execution of the deed and of the debts purporting to be secured by it, would not raise the legal presumption that the deed was valid, when it appeared that it was recorded in proper time, then the deed must be fraudulent on its face, for in substance it shows nothing more.

3. The fourth charge is in the following language: "That if the defendants had proved the execution of the deed and that the debts secured thereby were *bona fide* and the deed recorded in the proper time, then Campbell and his securities were not affected by any secret trust intended by the parties to the deed for the benefit of J. M. Friou, unless they were satisfied from the evidence that Campbell knew of the fraudulent intent."

37

It is the duty of a sheriff to use due diligence in the execution of process, whether final or mesne. If he does this, he discharges his duty and cannot be held liable, although he has failed to execute the writ. Thus, if a defendant in execution be not in the possession of any property, and the sheriff has no knowledge that he has any, nor by ordinary diligence can ascertain that he has, and none is pointed out or shown to him as the property of the defendant, if he returns the writ, no property, under such circumstances, he could not be liable although it might afterwards appear that the defendant had property liable to be sold under the writ. To hold the rule to be otherwise would be to hold the sheriff liable at all events, if the defendant had property, although the sheriff could not ascertain the fact or find the property. But if the defendant was in the possession of property, the presumption of law then is, that he is the owner of it, and that it is liable for his debts; and if a sheriff under such circumstances returns the execution, no property, he assumes the burthen of proving that the property in the possession of the defendant and which he could have levied on, is not liable to the execution. In the case of Minter v. Bigelow & Co. 9 Port. 481, it was said, "when a sheriff returns an execution, no property to be found out of which the execution can be satisfied, it is incumbent on the plaintiff, if he would gainsay the return, to show that it is presumptively false. This may be done by showing that the defendant is in possession of property, and if he is not the owner of it, or if it be not liable to the execution, it will devolve on the sheriff to show by proof that such was its condition. He will, however, be relieved from this burthen, where the title to the property was doubtful, if he has used the precaution while the execution was in his hands, to require a bond of indemnity of the plaintiff, who has declined to comply with the requisition. In the case of Smith v. Leavitt, 10 Ala. 92, Judge Ormond, speaking of this same deed, said, "that it was such a conveyance as may be a justification to the sheriff in refusing to make a levy, or in restoring the property after a levy had been made. To be a justification for him, it must be a valid transfer of the property, and in justifying under it he assumes the burden of proving the deed is *bona fide* and effectual in law for the purpose for which it was made." These decisions affirm the rule, that if a defendant in execution is in

the possession of property and the sheriff assumes the responsibility of returning it, no property, without doing any thing more, he is bound when proceeded against for not making the money, to show that the property is not liable to the execution, and if he fails to do that, he must be held liable.   It is therefore clear that in determining the liability of a sheriff for failing to make the money on an execution, whether the defendant was in possession of the property or not, becomes an important inquiry. If it be shown that the defendant was in possession of none, the sheriff is not liable, unless it can be shown that he was the owner of property on which a levy could be made and of which the sheriff had notice, but if it be shown that the defendant was in the possession of property which could have been levied on by the sheriff, and without taking any further step to protect himself from liability, he returns the writ, no property, he is bound to show that the property is not liable to the execution. Applying these rules to the instructions given, we think the court erred.   The charge assumes, or at least conveys the idea, that the rules of law in ascertaining the liability of the sheriff are the same, although the deed was fraudulent, whether J. M. Friou or his grantees were in possession.   This, we have seen, is not the law.   The testimony furnished us by the record, to say the least of it, was conflicting as to whether J. M. Friou or the trustees named in the deed had the possession of the property.   It was therefore a material question to determine who had the possession in fact.   The charge of the court rendered this inquiry unnecessary by applying the same rule of law in ascertaining the liability of the sheriff, whether J. M. Friou or his grantees were in possession.

4.   The fifth charge was that if J. M. Friou intended to delay, hinder and defraud his creditors, but the trustees and the prefered creditors did not join in that intent, the deed was valid. If the question raised by this charge could be considered as an open one in this court, I should willingly hold that the court erred, for the fraudulent intent of the grantor must render the deed void as against creditors intended to be defrauded by it, unless the grantee can place himself on a ground, or in a condition not to be affected by the fraud, and I know of no condition that such a grantee can assume to avoid the effect of the fraudulent intent of the grantor, unless it be that of a *bona fide* pur-

chaser for a valuable consideration without notice. But we are satisfied that the previous decisions of this court settle the question, that the fraudulent intent of the grantor alone in a deed of trust cannot affect the rights of the creditors intended to be secured by it, unless they have participated in that intent. In the case of Storer v. Herrington, 7 Ala. 142, the question arose whether the fraudulent intent of a mortgagor affected the rights of the mortgagee who did not participate in that intent. The consideration of the mortgage was for no advance of money, at the time it was executed, nor for any liability then incurred, but it was for liabilities previously incurred by the mortgagee on account of the mortgagor. This court held that the fraudulent intent of the mortgagor alone did not render the deed void. In the case of Anderson v. Hooks, 9 Ala. 704, the facts were that Hooks was the security of Harris to the Bank of Montgomery by note, dated the 3d of April 1841; on the 12th of May 1842, Harris executed a deed to him conveying real and personal estate, with authority to sell the same and from the proceeds to extinguish the debt due the Bank, whenever judgment should be rendered in favor of the Bank; the deed also recited that Harris was indebted to Stocks in the sum of eleven thousand dollars, which he was desirous to secure, and it was provided, that if this debt was not paid in eighteen months, Hooks was authorised to sell the property and pay it: Anderson, a creditor of Harris, sued out an attachment against him before any sale of the property was made, and caused it to be levied on it. The question arose between Hooks, the grantee, and Anderson, a creditor of Harris, and it appeared that the debt named in the deed as due to Stocks was simulated, and was inserted by Harris to defraud his other creditors, but it also appeared that Hooks was not privy to that fraudulent intent. This court held that the fraudulent intent of Harris alone did not avoid the deed as to Hooks. In both the cases refered to, the conveyance was intended to secure precedent debts merely; the grantor in both cases intended not only to secure the debts named in the deed, but also to defraud his other creditors: Yet it was considered that the fraudulent intent of the grantor alone was not sufficient to avoid the deed as against the creditors secured by it. These authorities are directly applicable to the case before us, and must be considered conclusive of it. We must

therefore hold that there is no error in this charge.   The criticism on this charge, that it conveyed the idea that the fraudulent intent of the grantor, even if participated in by the creditors intended to be secured by the deed, would not render it void, unless the trustees also were privy to that intent, we think is sufficiently answered by the plain meaning of the charge itself. The meaning that the court intended to convey was that the fraud of the grantor alone did not render the deed void, if neither the creditors nor the trustees participated in it, and we are satisfied that the jury must have so understood the court.

5.  The sixth charge given to the jury is also free from error. In the case of Graham v. Lockhart, 8 Ala. 1, this court held that the admissions made by a trustee in a deed of trust, he having no beneficial interest in the property conveyed by it, could not be recieved as evidence to defeat the rights of the *cestui que trust.*   In the case of Cowling v. Douglas, 4 Ala. 206, it was held that the omission of a trustee in a deed of trust to sell the property and execute the trust according to the provisions of the deed, did not render the deed void.   Indeed it is evident on principle, that if the deed was valid at the time of its inception, the rights of the creditors under it vested absolutely, and cannot be affected by the subsequent acts or admissions of the trustees who have no interest in the property and which are not in pursuance, but in violation of the trust.

6.  The seventh charge states a legal truism, for if two be in the joint possession of property, but the title is in one alone, the law will refer the possession to the title.   The owner could not be said to be out of possession of any part or portion of the property, and if in possession, he must be possessed according to his title.—Orr v. Pickett, 3 J. J. Marshall, 280.

7.  The eighth instruction to the jury, if erroneous at all, was beneficial to the plaintiff in error.   It was, that, if the deed was executed with a fraudulent intent on the part of the grantor and the trustees, it was void.   We have seen that the fraudulent intent of the grantor alone will not avoid a deed intended to secure *bona fide* debts, if the creditors do not participate in that intent.   A charge, therefore, that holds the deed void, if the trustees participated in the fraud, although they had no interest in the property, cannot certainly prejudice the party seeking to set aside the deed.

We do not feel at liberty to examine the assignment of errors growing out of the refusal of the court to give the instructions prayed by the plaintiff in error. This assignment of errors was abandoned on the first argument of this cause, and was not considered by the court in the opinion heretofore pronounced. A re-argument was granted, but not for the purpose of re-assigning as error the refusal of the court to give those instructions, nor of examining the question growing out of the refusal.

8. The remaining questions grow out of the ruling of the court in admitting and rejecting testimony. It appears that Campbell, the sheriff, and J. M. Friou, the grantor, had been partners in trade, but had dissolved in the year 1838. A witness, to whom the firm had been indebted, was offered by the plaintiff to prove that Campbell said in a conversation with him, after the execution of the deed of trust, that Friou was an extravagant man and would not pay his debts, and that he, the witness, would have trouble in getting the proportion of the firm debt due from Friou. The rule in reference to the relevancy of testimony is, that facts and circumstances which, when proved, are incapable of affording any reasonable presumption or inference in regard to the material fact or inquiry involved in the issue, cannot be given in evidence. The propriety of this rule must be admitted by all, when we reflect that every fact or circumstance given in evidence may be controverted, and if a party could be permitted to give in evidence facts or circumstances which could afford no light, by which to ascertain the truth of the material matter in dispute, many embarrassing questions would be presented, both for the court and jury, which, when solved, would not advance us one step in the material inquiry. Such questions might embarrass the court, and often mislead the mind of the jury from the true matter or point in dispute. The only inquiries or questions in dispute between the parties must have been, was the deed fraudulent, and did Campbell, the sheriff, know it to be so? That the sheriff said to the witness that Friou was an extravagant man, tended to solve neither the one, nor the other of these inquiries; it neither showed fraud in the deed nor a knowledge of that fraud on the part of Campbell. The court also correctly excluded the testimony, which showed that Campbell in 1838 recommended Friou to merchants in New York as worthy of credit, and as worth nine thousand dol-

lars. We do not see what legitimate inference could be drawn from such evidence, or what light it could afford in arriving at the truth of the questions involved in this cause. Of the same character is the testimony tending to show the acts of Campbell and Dawson, in reference to the deed of trust executed by Campbell. We cannot conceive on what principle this testimony could have been permitted to go to the jury. Whether the deed executed by Campbell was fraudulent or not, was not a question before them. To permit evidence, tending to show the deed of Campbell to be fraudulent, would have led to the examination of questions entirely distinct from the issues submitted in this cause, and when solved, the jury would not have been advanced one step in the investigation of the material facts in this case.

The court also acted correctly in rejecting that portion of Dawson's answer to the fourteenth cross-interrogatory objected to by the defendants. The motive of Dawson in dismissing a suit against Smith, who had levied on a portion of the property conveyed by the deed, did not tend to prove either of the material inquiries in this cause; but when he said he dismissed the suit, because he had heard, after he left the State, of the fraudulent conduct of the Frious, its illegality is manifest, for it shows that his reason for dismissing the suit was a rumor he had heard. To permit his reason for doing an act, founded on rumor, to be given in evidence would be to permit the effect of common rumor to be given in evidence, when the rumor itself would be illegal testimony. The dismissal of the suit was an act, and was not objected to by the defendants, but the motive or reason why Dawson did this act is clearly illegal evidence and was properly excluded.

We have thus disposed of all the questions that grow out of the ruling of the court and which have been presented for our revision, and our conclusion is that the fourth instruction given by the court to the jury cannot be sustained. The judgment must therefore be reversed and the cause remanded.