## WHITSETT, GARNER & CO. *vs.* SLATER.

1. When a sheriff is ruled for failing to make the money on an execution, evidence that the defendant in execution " was in possession of a house and lot, as of his own property, prior to the day on which the execution came to the sheriff's hands, claiming ownership thereof, and continued in possession until after the return day of the execution," is admissible evidence for plaintiff.

2. Evidence of general neighborhood rumor that certain slaves, in the possession of the defendant in execution, were the separate property of his wife, is not admissible evidence for the sheriff, either to show an excuse for not levying plaintiff's execution, or as tending " to show a reasonable excuse for not levying within a reasonable time for making necessary inquiries as to the title of the property."

3. What constitutes due diligence on the part of the sheriff depends materially on the facts of each case, and no general rule of universal application can be laid down by the courts; but where he receives an execution against a resident citizen of his county, who is in open possession of personal property sufficient to satisfy it, and he makes no effort, for thirty days after its reception, to levy or to give plaintiff notice of any real doubts which he may entertain of the liability of the property to the execution, he is guilty of a want of due diligence.

4. A charge is erroneous, which assumes certain facts as proved, without referring to the jury the credibility of the testimony, and allowing them to determine whether those facts are proved or not.

5. What constitutes due diligence on the part of the sheriff, is a mixed question of law and fact; the jury must determine the facts, while the court decides whether they constitute due diligence.

ERROR to the Circuit Court of Washington.

Tried before the Hon. LYMAN GIBBONS.

The plaintiffs in error, having two judgments in the Circuit Court of Washington County against Curtis N. Wilcox, Jacob Boyd and George W. Boyd, caused two writs of *fi. fa.* to be issued thereon on the 24th day of March, 1849, which came to the hands of the defendant in error, as sheriff of Choctaw County, on the 30th day of March, 1849. Said executions were returnable on the 2nd Monday in October, 1849. The sheriff having failed to make the money thereon, the plaintiffs in execution suggested such failure to the court, and that he could have made the money by the exercise of due diligence. Whereupon a rule was granted against said sheriff, requiring

him to show cause why judgment should not be entered against him for the amount of said *fi. fa.*, with the interest, damages and cost prescribed by the statute in such cases.

The defendant appeared in obedience to said rule, when an issue was made up and tried between the parties.

On the trial of this issue, as is disclosed by the bill of exceptions, the plaintiffs proved that the writs of *fi. fa.* in their favor against Wilcox and the Boyds issued, and came to the hands of the defendant as sheriff of Choctaw County, at the times stated in the suggestion; that at that time Jacob Boyd lived on a plantation in Choctaw County, and had in his posssession three slaves, Jack, Bob and Eliza; that the defendant levied on Jack, under plaintiffs' executions, on the 3rd May, 1849; that said Jack was taken from said sheriff under a writ in detinue, at the instance of the representatives of John Boyd, deceased. Plaintiffs further offered evidence tending to show that the girl Eliza continued in the possession of Jacob Boyd, as a house servant, until the middle of June, 1849; that Bob continued in his possession, employed as a field hand, until about the 1st August, 1849; that when these slaves left the possession of said Boyd, they were run off and disposed of by his wife. Plaintiffs also introduced one Petty as a witness, who testified that he went to live at Jacob Boyd's on the 1st June, 1849, having been employed by Mrs. Boyd; that he was specially charged by Boyd and wife to keep the negroes, Bob and Eliza, beyond the reach of any one who might approach, as it was apprehended the sheriff would try to levy upon them; that early in June the sheriff came to the house of Boyd, for the purpose of levying upon said negroes, but witness saw him, or heard of his being there, and told the boy Bob to hide in the gin-house; that witness then went to the house, and found the sheriff and several of the neighbors sitting in the piazza; that witness passed into the house, and went to sleep; when he awoke and came out, he saw the sheriff leaving the place; that soon after the sheriff was gone, the door leading to the second story of the house was unlocked, and the girl Eliza came out; that about two weeks afterwards the sheriff came again to the house of said Boyd; that in the intermediate time Mrs. Boyd had carried off the girl Eliza, and disposed of her; that on this occasion the boy Bob slipped off into the woods before the sheriff got to the house or

could see him; that the sheriff came twice in July to levy on Bob, but the slave was studiously kept out of his way. But there was no proof of any efforts to conceal said slaves before the 1st of June. It was also in proof that the sheriff demanded of the plaintiffs a bond of indemnity, before he would levy on the slaves, Bob and Eliza, in the possession of Boyd; this demand was made about the 1st June, 1849, and the bond was given six or seven days afterwards.

The plaintiffs also introduced one McCarty, who, on cross-examination stated that, in his opinion, neither the sheriff nor any of his deputies could have levied on the slaves, Bob and Eliza, from the time said writs of *fi. fa.* came into his hands, until they were removed from the county. On re-examination he stated, that he was at the house of Jacob Boyd twice or three times only, in company with said sheriff, and that was in the month of June, 1849; that Bob was a constant field hand, and Eliza a house servant, at Jacob Boyd's, during the summer of 1849, until Eliza was taken away about the middle of June, and Bob about the 1st of August of that year; that witness lived near Boyd, and was at his house nearly every day.

The plaintiffs further offered to prove by parol, that one of the defendants in the executions was in possession of a house and lot in said county, as of his own property, prior to the 30th of March, 1849, the day on which the sheriff received said writs of *fi. fa.*, claiming ownership of said house and lot, before said 30th of March, 1849, and continued in possession thereof until the return day of said executions. The plaintiffs proposed to prove these facts for the purpose of showing property in said house and lot in said defendant, and that the same was liable to the execution. This proof the court excluded, holding that the mere possession of real estate, without claim of ownership, was not *prima facie* evidence of such title as is subject to execution; and that evidence of the possession of the house and lot, with claim of title, prior to the coming of the execution to the hands of the sheriff, was inadmissible, unless there was evidence of claim of title or ownership after the coming of the execution to the sheriff's hands; to which ruling of the court the plaintiffs excepted.

The defendant then offered to show as an excuse for not having levied the plaintiffs' executions, that, at the time they came

to his hands, and while he held them, there was a general rumor in the neighborhood of Jacob Boyd, that the slaves Bob and Eliza, which he then had in his possession, belonged to his wife. To this the plaintiffs' counsel objected; but the court admitted the evidence, holding that it was proper, as it tended to show a reasonable excuse for not levying within a time reasonable for making necessary inquiries as to the title of the property; to which ruling of the court the plaintiffs excepted.

The court charged the jury, that, if the sheriff received the executions on the 30th of March, 1849, and they were returnable to the Fall term of the Circuit Court of Washington County, and the sheriff had a reasonable doubt whether certain slaves belonged to one of the defendants in the executions, he would not be chargeable for want of due diligence, by waiting a reasonable time before notifying the plaintiffs in execution of his doubts as to the liability of the property, and demanding a bond of indemnity; and that from the 30th of March, 1849, to the 1st of May of that year, was not an unreasonable time.— To this charge the plaintiffs excepted. The plaintiffs then asked the court to charge the jury, that, after receiving the bond of indemnity, the sheriff did not use due diligence simply by going to the house of one of the defendants in execution, who had slaves in his possession, and, knowing the slaves to be there, not going to the kitchen or negro houses or to the fields for the purpose of finding the slaves. This charge the court refused to give, but stated to the jury, that the question of diligence, under the circumstances, was left to their determination, under the proof. To the refusal of the court to give the charge asked, and to the charge given, leaving the question of due diligence to the determination of the jury, the plaintiffs excepted.

The several matters excepted to are here assigned for error.

C. W. RAPIER, for plaintiffs in error:

On suggestion against a sheriff for failing to make the money under an execution, evidence that the property in possession of the defendant in execution was said not to belong to the latter, will not excuse the sheriff from a levy.—Robertson v. Beavers, 3 Por. 385.

Where one has been in possession of land for several years, the inference is that the occupancy is legal, and that he has such

an interest as may be sold under execution.—Doe *ex dem*. Heydenfelt v. Mitchell, 6 Ala. 70.

If the defendant is in possession of property, the presumption of law then is, that he is the owner of it, and that it is liable for his debts ; and if a sheriff, under such circumstances, returns the execution "no property," he assumes the burthen of proving that the property in the possession of the defendant, and which he could have levied on, is not liable to the execution.—Governor v. Campbell, 17 Ala. 570.

The Circuit Court, at one stage of the proceedings, ruled that it was not unreasonable for the sheriff to delay making a levy for a specified time ; and, at another stage, ruled that the question of due diligence was altogether for the determination of the jury. These positions are inconsistent, and one or the other is erroneous.

JOHN T. TAYLOR, *contra* :

To enable the plaintiff to recover, it was required of him to prove : (1st,) that the defendant in execution had property (2d,) during the time the execution was in the hands of the sheriff, (3d,) subject to levy and sale under the execution, and (4th) want of diligence ; and in fixing the penalty on the sheriff, the plaintiff must be held to a strict performance of these requisites. The mere naked possession of land does not prove or raise even a presumption of a legal title, which is alone subject to levy, and differs widely in this respect from personal property, which was the case in 3 Porter referred to by plaintiffs.

Even possession and claim of title does not come within the rule, for land is owned under writing. If the claim should be made under deed or writing, as if the tenant should say that he claimed under a deed from A B, this, with possession, might be *prima facie*. One may be in possession under good claim, but it may be merely equitable, which is not subject to levy—a pre-emption right, and many other claims that may be cited. But in this case there was no possession and claim during the time the execution was in the sheriff's hands.

In the case in 6 Ala., referred to by plaintiffs, the defendant in execution had been in possession four years, claimed title, and had built houses and other valuable improvements. There was something tangible that did belong to the defendant, the houses

and improvements were at least his. It is an easy matter for the plaintiff to show title in the defendant if he has any ; but if you presume title in the defendant in execution, then you make the sheriff take the place of a plaintiff in ejectment, and prove a perfect title in a third person against the world.

As to third and fourth assignments of error, the plaintiffs complained that the sheriff had delayed too long in asking for an indemnity bond, and on this point the evidence of rumor was admitted, and was certainly proper to give the sheriff time to look into the right of Boyd ; but even if either of these assignments was error, still no injury was done plaintiff ; the delay could not have injured him even if entirely unexcused, because both the negroes were still at Boyd's, in the same position when the bond was given, and until a long time afterwards, and the execution was not returnable until October.

Whether the negroes could have been taken or not, or whether the sheriff should have gone to the kitchen, or to the gin, or to any other particular place, is purely a matter of diligence, which the act itself under which the plaintiffs brought this rule imperatively requires.

LIGON, J.—1. The first exception taken in the court below relates to the ruling of that court in excluding from the jury the evidence offered by the plaintiff, tending to show that one of the defendants in the executions which the sheriff had in his hands " was in possession of a house and lot in Choctaw County, as of his own property, prior to the day on which the executions came into the hands of the defendant in this suit, claiming ownership thereof, and continued in possession until after the return day of the executions." It does not appear that the sheriff used any exertions whatever to make the money on the writs in his hands out of the lands of any of the defendants, or, indeed, that any one of them possessed lands under claim of title, except the one alluded to in the above exception.

When a proceeding is instituted by a plaintiff in execution, against a sheriff for failing to make the money on an execution in his hands, and the former shows that the defendant in execution was in possession of property which, from its nature, is the subject of levy and sale for the satisfaction of his judgment, it is incumbent on the latter, especially if he has returned the ex-

ecution " no property found," without an effort to levy on such property, to show that it is not subject to sale for the satisfaction of the judgment. If the property possessed by the defendant in execution be land, it is not necessary that the plaintiff should show that his debtor is in possession under a deed, in or-der to establish that it is liable to the payment of his judgment. Many possessory interests in lands are the subject of levy and sale under executions on judgments at law, which are not re-quired to be evidenced by deed duly registered. The written evidence of such interests is generally in the possession of the defendant in execution, and entirely beyond the control or power of his creditor. In such cases, the only evidence which the creditor could adduce on a proceeding like the present would be parol evidence of such possession and claim of ownership in reference to the lands by the execution debtor, as would create a reasonable presumption that he was the owner of such lands. In such cases it has been held, that, if the defendant in execution has been several years in possession of the premises, under a claim of ownership, and has made improvements thereon, it will authorize the presumption that he has such an interest as is the subject of levy and sale under execution on a judgment at law.—Doe ex dem. Heydenfeldt v. Mitchell, 6 Ala. 70. The facts relied on in that case to establish the interest of the de-fendant in execution were all proved by parol, and are of a class which are not ordinarily proved in any other way. The evidence offered in this case is of the same character, and the facts proposed to be established by it tend as strongly to prove a lev-iable interest in the defendant in execution, as did those proved in the case cited. The circumstance that the claim of title by the defendant in execution, accompanied with possession, was made before the execution came into the hands of the sheriff, can make no material difference, since the plaintiffs offered to show, in connection with that proof, that the defendant, who so possessed the premises and claimed title to them, continued in the uninterrupted possession of them until the return day of the *fi. fa.*, and there is no pretence that he ever disclaimed his ownership. The law will refer the subsequent possession to the prior claim of title, when nothing is shown to rebut such an in-ference. Although such evidence is not conclusive of title in the defendant in execution, yet it tends to make out, *prima fa-*

*cie,* such an interest as the sheriff might have levied upon, and was consequently admissible. Under such circumstances, if the sheriff return the *fi. fa.* "no property found," as is the case here, he assumes the burden of proving that the property in the possession of the defendant, which he could have levied upon, is not liable to the execution.—Governor v. Campbell *et al.,* 17 Ala. 570.

2. The third assignment of error is predicated on the action of the Circuit Court in admitting evidence of the general rumors in the neighborhood of Jacob Boyd, that the slaves Bob and Eliza were the separate estate of the wife of Boyd, and consequently not liable to the plaintiff's execution. It is said, in the bill of exceptions, that this evidence was offered "to show an excuse," on the part of the sheriff, "for not having levied the plaintiff's execution," and was admitted by the court, "as it tended to show a reasonable excuse for not levying within a time reasonable for making necessary inquiries, as to the title of the property."

The purpose for which this evidence is said to have been offered is easily understood, and for that purpose it is wholly inadmissible; but we do not clearly understand the purpose for which it is said to have been allowed. General rumor is, at best, but hearsay, and cannot be received to excuse a sheriff for failing to perform a duty imposed upon him by law. If the property held by the defendant in execution does not really belong to him, and the title is in another, this fact, in a proceeding like the present, must be proved, as title is required to be shown in any other action in which it is called in question. If the sheriff had such real doubts of the property being liable to the execution in his hands, as to induce him, under our statute, to require indemnity from the plaintiffs in execution before he would hazard a levy; and if he required such indemnity within a reasonable time after the writ came into his hands, and the plaintiffs failed or delayed in giving it, he could show such demand, failure and delay, and rely upon this as his excuse for not making prompt efforts to charge the property in execution.— Watson on Sheriffs 195; 9 Ala. 30. But he will not be allowed to show, that, from neighborhood rumor, he had reason to doubt the ownership of the property, and leave the jury to infer that his negligence was attributable to this cause. Indeed

77

his doubts will not justify any delay on his part, unless he has acted upon them, and demanded indemnity, which the plaintiff has refused or delayed to give.—Robertson v. Beavers, 3 Porter 385. A capricious doubt as to the ownership, or one founded on mere rumor, will not excuse him.—Smith v. Leavitt, 10 Ala. 92. It was, therefore, erroneous to allow testimony of neighborhood rumors to go to the jury, when it was objected to by the plaintiffs.

The affirmative charge of the court asserts, that, " if the sheriff received the executions on the 30th of March, 1849, and they were returnable to the Fall term of the Circuit Court of Washington County, and the sheriff had a reasonable doubt whether certain slaves belonged to one of the defendants in execution, he would not be chargeable for want of due diligence, by waiting a reasonable time before notifying the plaintiffs in execution of his doubts as to the liability of the property, and demanding a bond of indemnity; and that from the 30th of March to the first of May was not an unreasonable time." To this charge exception was taken by the plaintiffs.

The question of what constitutes due diligence, is a mixed one of law and fact. It is for the jury to say whether the proof makes out the facts, which the court determines will constitute due diligence. In this respect, the charge under consideration is faultless. What constitutes due diligence, must depend materially upon the facts of each case; no general rule can be laid down by the courts which will be of universal application; but we think it may be safely said, that where a sheriff has received an execution against the property of a resident citizen of his county, who is in open possession of personal estate sufficient to satisfy it, and he makes no effort to levy, and uses no diligence to give the plaintiff notice of any real doubts he may entertain of its liability to his execution, that he may have an opportunity to indemnify him, for thirty days after the reception of the process, he is guilty of a want of due diligence. The court below ruled differently in the charge we are now considering, and in that we are of opinion it erred.

Reasons may often be found which would exempt the sheriff from such an imputation for failing *to make a levy* for that length of time; but it would be difficult to conceive of any which would justify total inaction on his part, or excuse his negli-

gence in seeking indemnity, if he entertained real doubts whether the property was subject to the process in his hands, for the space of a month after he had received it. Certainly the facts presented by this record will not excuse the delay.

4. There was no error in refusing the charge asked by the plaintiff in the court below, in the form in which that charge is set out in the bill of exceptions, for the reason that it makes the court affirm that certain facts have been proved, without referring it to the jury to pass upon the credibility of the testimony, and to say whether those facts were proved or not. It assumes a state of facts as proved, and on this predicates a conclusion of law, which the court is asked to give in charge to the jury. Such charges are never allowable in any case.—Bradford v. Mayberry, 12 Ala. 520; Ivers v. Phifer, 11 ib. 535.

But there is error in the directions given to the jury by the court, in connection with its refusal to give the charge requested by the plaintiffs. Those directions assert, as a legal proposition, that the jury have the right, on questions of due diligence, not only to pass upon the facts, but also to say whether they show the diligence required by law. The former part of this proposition is clearly correct, while the latter is clearly erroneous, for the court alone can say whether the facts found by the jury to be proved, make out a case of due diligence on the part of the sheriff.—Stanly v. Bank of Mobile, at the present term.

For the errors pointed out, the judgment must be reversed, and the cause remanded.