## NUCKOLLS *vs.* PINKSTON.

[DETINUE FOR SLAVES, AGAINST SHERIFF.]

1. *To what witness may testify.*—A witness cannot be allowed to testify that a person "was insolvent," although he states that he "knows the fact of his own personal knowledge."

2. *Separate estate of married woman under chancery decree; in whom legal title vests.*—Where the future earnings of a married woman are settled on a trustee for her separate use, by a decree in chancery rendered under the 4th section of the act of January 31, 1846, and she afterwards purchases a slave with her separate earnings, the legal title vests in the trustee to whom the vendor's bill of sale purports to convey it for her separate use, and not in the trustee named in the decree.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN GILL SHORTER.

This action was brought by James K. Pinkston, "trustee of Matilda S. Pinkston, his wife, and who sues for her use," against Geo. B. Nuckolls, to recover two slaves, together with damages for their detention; and was commenced on the 10th January, 1854. The defendant pleaded the general issue, and a special plea *puis darrein continuance*, averring the death of Mrs. Pinkston after the commencement of the suit; and issue was joined on both of these pleas. On the trial, as the bill of exceptions shows, the plaintiff offered in evidence a certified transcript of the record of a chancery suit, instituted by Mrs. Pinkston, suing by her next friend, against her said husband, James K. Pinkston, for the purpose of having her future earnings and acquisitions settled on a trustee for her sole and separate use, as authorized by the 4th section of the act approved January 31, 1846; in which a decree was rendered, on the 23d July, 1850, in the following words: "It is therefore adjudged and decreed, that all the earnings and accumulations of the complainant, Matilda S. Pinkston, resulting hereafter from her labor and industry, be vested in Moses McLemore, for the sole and separate use of the said Matilda S. Pinkston, the same as if she was sole and unmarried." The slaves were purchased by Mrs. Pinkston on the 4th December, 1851, and, as the plaintiff contended, were paid for with money arising from her separate earnings after the rendition of this decree. The bill of sale, which was offered in evidence by the plaintiff, was dated December 4, 1851, and was in these words: "In consideration of the sum of $1625, to me in hand paid by Mrs. Matilda S. Pinkston, I have bargained, sold, and delivered, and do, by these presents, bargain, sell, and deliver, to James K. Pinkston, in trust for the sole and separate use of the said Matilda S. Pinkston, two slaves," &c. The defendant, as sheriff of Macon county, levied an execution on the slaves, as the property of James K. Pinkston, on the 14th December, 1853; and the evidence adduced by him tended to show, that the purchase-money paid for the slaves "was the proceeds of the labor of certain other slaves, which were placed by said James

K. Pinkston under the control of his wife, in 1839–40, under an agreement between them which was void as to his existing creditors, and which did not create any separate estate in her;" and that the decree in chancery, on which said execution was issued, was founded on an indebtedness which existed in 1838. It was admitted, that Mrs. Pinkston died in July, 1857.

"The plaintiff offered to prove, that James K. Pinkston had a large amount of property in his possession, in the years 1839 and 1840, and was then in good credit. The defendant objected to this proof, as illegal and irrelevant; but the court overruled his objections, and admitted the evidence; to which the defendant excepted. The plaintiff asked a witness, whether or not James K. Pinkston was insolvent in 1849–50. The defendant objected to this question, on the ground that it called for evidence which was illegal, irrelevant, and improper; but, the witness having stated that he knew the fact of his own personal knowledge, the court overruled the objection, and permitted the witness to testify that said Pinkston was insolvent in 1849–50; to which the defendant excepted. The defendant adduced evidence tending to show, that Moses McLemore, the trustee named in said chancery decree, accepted the trust conferred by said decree, and acted under the same; and there was no evidence that said McLemore had ever resigned the said trust, or been removed, or had at any time failed or refused to act."

" Upon the foregoing evidence, the court charged the jury—1st, that although James K. Pinkston was the husband of Mrs. Matilda Pinkston, and although Moses McLemore had been appointed trustee of Mrs. Pinkston under the decree in chancery which had been read in evidence, and had accepted the trust; yet, by the bill of sale for the slaves in evidence before them, the legal title to said slaves vested in James K. Pinkston, and did not vest in said McLemore by virtue of said decree; nor did the death of Mrs. Pinkston, since the commencement of this suit, terminate plaintiff's right to prosecute the suit to judgment."

This charge of the court, to which the defendant reserved an exception, and the rulings of the court on the evidence, are now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellants.

A. J. WALKER, C. J.—In permitting a witness to state, notwithstanding the defendant's objection, that Pinkston was insolvent, the court violated a principle announced in *Brice & Co. v. Lide*, 30 Ala. 647, and committed an error for which we must reverse the judgment.

We do not now perceive that the evidence as to Pinkston's pecuniary condition in 1839 or 1840, had any relevancy to the case; but, as there may be some aspect in which it had some bearing upon some question of the case, which has escaped our attention, we forbear to decide positively that it is irrelevant.

[2.] One of the objections to the first charge given, is rather a criticism upon, than a controversy of the principle which the judge intended to assert; and it may be obviated upon another trial, by attention to the language used. The other objection is more grave and important. It presents this question: where a married woman was, by a decree under the 4th section of the act of 31st January, 1846, invested with a separate estate in her subsequent earnings and accumulations, and a trustee was appointed, does the legal title to personalty purchased by her with her earnings vest in the trustee, to whom, for her sole and separate use, the conveyance by the seller was made, or in the trustee appointed by the court? The legal title was in the seller, up to the time of sale; and it passed from him, only by virtue of the conveyance. It could not pass to a different person from the one to whom the conveyance was made. We can not subscribe to the proposition, that the appointment of a trustee of a married woman's earnings by the chancery court precludes the possibility of the investiture of a different person with the legal title of property purchased with those earnings for her use. If such were the law, we would have the anomalous result, that in all cases of invol-

untary trusts, or trusts *in invitum*, the party upon whose conscience equity forced the trust, would be deprived of the legal title, and it would be vested in the trustee appointed by the chancery court.

For the error above pointed out, the judgment of the court below is reversed, and the cause remanded; the reversal to take effect as of the 13th day of February, 1860, when the cause was submitted.