# Abbott, Downing & Co. *v.* Gillespy.

*Action against Sheriff and Sureties on Official Bond for Failure to make Money on Execution.*

1. *Action against sheriff for failure to make money on execution; measure of damages.*—In an action against a sheriff and the sureties on his official bond for failing to make the money on an execution, the actual injury sustained is, in the absence of statutory regulation, the measure of damages; and hence, it is competent for the defendants to show that the plaintiff has sustained no injury.

2. *Same; what may be shown in defense.*—It is competent for the defendants, in defense of such an action, to show that the defendant in execution had no property subject to levy and sale under execution at law; or that his property was encumbered by mortgage or other lien, of the existence of which the plaintiff was chargeable with notice.

3. *Same; when prior execution no defense.*—But it is no defense to such an action, that the sheriff had in his hands another and prior execution against the debtor, unless that execution had been actually levied.

4. *Same; failure to levy on exempt property.*—While the statute does not make it the absolute and imperative duty of a sheriff to levy upon exempt property, where the debtor has failed to file his declaration and claim in the office of the probate judge, it is the safer policy for him to make the levy, thereby enabling the creditor to contest the claim of exemption under the provisions of the statute, as, on his failure or refusal to levy upon such property, when shown to have been in the debtor's possession, he assumes the burden of proving that it was in fact exempt.

5. *Same; admissibility of evidence.*—A sheriff, in an action against him for failing to make the money on execution, may testify as a witness for himself, that he made diligent search for property belonging to the defendant in execution, and found none; but he can not testify that he returned several executions against such defendant "no property found," unless he first lays a proper predicate for the introduction of secondary evidence of the existence and contents of the executions.

6. *Same; proof of insolvency.*—The insolvency of the defendant in execution, in such case, can not be testified to as a collective fact, it being a legal conclusion deducible from facts and circumstances in evidence; but it may be shown by evidence of the issue of executions on other judgments against the defendant in execution, and of the returns thereon of "no property found."

7. *Same; what no defense.*—It is no defense to an action against a sheriff for failing to make the money on execution, that he declined to levy on property in the possession of the execution debtor, because he honestly believed that it was exempt; and hence, evidence of that fact is inadmissible for him.

8. *Same; when claim of exemption admissible for sheriff.*—In such action, a claim of exemption, properly verified and filed in office of probate judge after the issue of the execution, but before any levy is made, by the defendant in execution, covering all the property found in his possession, is competent evidence for the defendant; as such claim is made by statute *prima facie* evidence of its correctness as against the debtor's creditors.

Vol. lxxv.

[Abbott, Downing & Co. v. Gillespy.]

APPEAL from Talladega Circuit Court.

Tried before Hon. LeRoy F. Box.

Abbott, Downing & Co., a partnership, brought this action against James Gillespy and others, to recover damages for the alleged breach of the condition of the official bond of the defendant Gillespy, as sheriff of Talladega county (the other defendants being his sureties thereon), in negligently failing to make the money on divers writs of execution issued on a judgment recovered by the plaintiffs in the circuit court of said county on 26th October, 1876, against James W. McMillan. The defendants' plea was, in substance, the general issue, and on issue joined on that plea the cause was tried, the trial resulting in a verdict and judgment for the defendants.

The plaintiffs proved the recovery of their judgment against McMillan, as averred in their complaint, the election of the defendant Gillespy as sheriff on 6th August, 1877, the execution of his official bond on 21st August, 1877, and his continuance in office during the term for which he was elected. It was also shown that prior to, and during the said Gillespy's term of office, executions were regularly issued on said judgment from term to term ; that the executions issued thereon during his term were placed in his hands, and by him returned " no property found ;" that in 1878, 1879 and 1880, while the said Gillespy, as such sheriff, had in his hands executions on said judgment, the said McMillan "owned and had in his possession personal property, including a growing crop," valued at from $1,700 to $2,000 ; that on several occasions when said executions were in the hands of the said Gillespy, the plaintiffs' attorney notified him " where said property was, and of what it consisted," and directed him to levy thereon, "which he declined to do ;" and that the said McMillan, during said years, also owned and resided on a tract of land containing about twenty-two acres, and adjoining the town of Talladega, of the value of $1,500.

The evidence introduced on behalf of the defendants showed that, at the spring term, 1876, of said circuit court (the term preceding plaintiffs' recovery against McMillan), one Cruikshanks, as administrator of the estate of W. Y. Hendrick, deceased, recovered a judgment against James W. McMillan for $5848.53 and costs of suit, and that executions were duly and regularly issued on said judgment from term to term, from the time of its rendition until after the term of office of the said Gillespy, as sheriff, had expired, which were returned " no property found." Their testimony tended to show further, that the twenty-two acres of land which said McMillan owned, referred to in the plaintiffs' evidence, was, during the term of office of the said Gillespy, exempt to him as a homestead ;

that he owned no other real estate, but rented other lands during each of the years in which said Gillespy had in his hands executions against him, which he cultivated, and on which he raised the crops referred to in the plaintiffs' evidence; that to enable him to make said crops, he obtained, during each of said years, "large advances of money" from his landlord; and that "at no time while the said Gillespy held the office of sheriff as aforesaid, did the personal property owned by said James W. McMillan, including the crops, growing or gathered, belonging to said McMillan, exceed in value the sum of $1000."

On cross-examination of John F. Warwick, a witness examined on behalf of the plaintiffs, and who appears to have been Gillespy's predecessor in office, the defendants asked the witness whether he had not had executions against the said McMillan in his hands during the time he was sheriff, which had been by him returned "no property found." To this question the plaintiffs objected, but their objection was overruled, and they excepted. The witness answered that while he was sheriff, he received and returned executions against the said McMillan "no property found." To this answer the plaintiffs objected, but their objection was overruled, and they excepted. This witness, in response to a question asked him by the defendants, having testified that he was acquainted with the financial condition of the said McMillan during the terms of office of himself and of the said Gillespy, the defendants asked him to state whether the said McMillan was, during that time, solvent or insolvent. The plaintiffs objected to this question, but their objection was overruled, and they excepted. The witness answered that, during said time, the said McMillan was insolvent; and the plaintiffs excepted to this answer.

The said Gillespy was examined as a witness on behalf of the defendants, who testified that "during the time the executions in favor of the plaintiffs against James W. McMillan were in the hands of the witness as sheriff, and at the different times when the attorney of the plaintiffs pointed out the growing crop and other property of McMillan to be levied on, he honestly believed that the property was not subject to levy or sale, and for this reason he declined to levy the executions." To this testimony the plaintiffs objected, but their objection was overruled, and they excepted. This witness further testified that about 21st November, 1879, when he had executions in his hands against the said McMillan in favor of the plaintiffs and the said Cruikshanks, as administrator, he called on McMillan, and informed him that he had an execution in favor of the plaintiffs against him, and that the plaintiffs' attorney had pointed out his property to be levied on, and that witness

would have to levy the executions, "unless he rendered a schedule of his property, and claimed what he was entitled to claim as exempt from sale under execution." To this evidence the plaintiffs objected, but their objection was overruled, and they excepted. The defendants were then allowed to read in evidence, against the plaintiffs' objection, a "schedule of property" claimed by the said McMillan as exempt from levy and sale for the payment of debts, which was duly verified by affidavit, and filed in the office of the judge of probate in and for Talladega county, on 21st November, 1879; and to this ruling the plaintiffs excepted. The personal property claimed in this "schedule," which is averred to have been all that the said McMillan then owned, is therein valued at $992; and the homestead therein claimed is valued at $1500.

The court charged the jury, *ex mero motu*, among other things, in substance, as follows: (1) That if the jury believed from the evidence that levies of the executions in the plaintiffs' favor against James W. McMillan, if made by the defendant Gillespy, while they were in his hands as sheriff, would have been fruitless, the plaintiffs were not entitled to recover. (2) That if the jury believed from the evidence, that at the time when the defendant Gillespy had in his hands, as sheriff, an execution against the said McMillan in favor of the plaintiffs, he also had in his hands an execution issued on the judgment recovered by the said Cruikshanks, as administrator of the estate of W. Y. Hendrick, deceased, against the said McMillan; and that if plaintiffs' execution had been levied on McMillan's property, and the property so levied on had been sold thereunder; and that the proceeds of sale would have been successfully claimed and applied to the said execution in favor of the said Cruikshanks, as administrator, etc.; and that thereby the levy would have been fruitless as to the plaintiffs, the plaintiffs were not entitled to recover. (3) That if the jury believed from the evidence, that if the defendant Gillespy had levied either of the executions in plaintiffs' favor upon the property of the said McMillan, and that the latter would have, in such an event, claimed the property levied on as exempt, and would have successfully maintained his claim, on a contest thereof, the plaintiffs were not entitled to recover. To these charges, and to others given at the defendants' request, not necessary to be set out in this report, as they raise the same questions, the plaintiffs duly excepted.

The rulings above noted are here assigned as error.

JOHN T. HEFLIN, for appellants. (1) It is not competent for a witness to testify to the insolvency of a person as a fact. Insolvency is a legal conclusion, to be drawn from facts and cir-

cumstances in evidence.—*Lawson v. Orear*, 7 Ala. 786 ; *Brice & Co. v. Lide*, 30 Ala. 647 ; *Nuckolls v. Pinkston*, 38 Ala. 618. (2) The objection to the testimony of Warwick, that he had returned executions against McMillan " no property found," should have been sustained. That was not legitimate evidence of insolvency ; in was *res inter alios acta*. Besides, the sheriff is as much bound to levy on the property of a defendant in execution who is insolvent, as he would be, if he were solvent.; There being no specific exemptions, and no schedule filed as provided by statute, to claim property as exempt from levy, the sheriff is bound to levy the execution, as he can not know in advance of a levy, that the execution debtor will claim his exemptions in the event of a levy.—*Rottenberry v. Pipes*, 53 Ala. 447 ; *Sheffey v. Davis*, 60 Ala. 548; *Whitsett v. Slater*, 23 Ala. 626. (3) The sheriff's belief that property is not subject to levy and sale under execution, was improperly admitted in evidence. His belief was a mistake of law, for which he must suffer the consequences.—*Jones v. Watkins*, 1 Stew. 81 ; *Gwynn v. Hamilton*, 29 Ala. 233. (4) The schedule of exemptions read in evidence was *res inter alios acta*. No notice of it was ever given to the plaintiff. The liability of the sheriff had accrued before it was filed ; and it could have no retroactive effect. The sheriff also procured the filing of this paper in his own wrong, and it is no protection to him.—Code of 1876, §§ 2828 *et seq.* ; *Ib.* §§ 2834 *et seq.* (5) The first charge given by the court, *ex mero motu*, was erroneous. It was the duty of the sheriff to levy the executions, and the existence of the hypothesis contained in the charge does not justify or excuse the sheriff in returning the plaintiffs' executions " no property found."—*Smith v. Hogan*, 4 Ala. 93 ; *Bell v. King*, 8 Port. 147.

Jno. B. Knox, *contra*. (1) The measure of plaintiffs' recovery was limited to the damage sustained.—*Gay v. Burgess*, 59 Ala. 575. When it is clearly shown that a levy, if made, would have been fruitless, the failure to make such levy does not operate to plaintiffs' injury. The sheriff is not required to do a useless thing ; and if it appear that the defendant in execution was wholly insolvent, and that a levy, if made, would have been unproductive, he is not liable for failing to make the levy.— *Wilson v. Strobach*, 59 Ala. 488. (2) Any evidence of McMillan's insolvency was competent for the sheriff ; and the evidence objected to in this case was to that effect. In *Wilson v. Strobach, supra*, a witness was permitted to testify that the firm of Collins & Ramsey *was insolvent*. (3) The claim of exemptions was competent for the sheriff upon the issue of insolvency.—*Block v. Bragg*, 68 Ala. 291.

SOMERVILLE, J.—The action is one claiming damages against the sheriff and his sureties, for his failure to make the money on an execution in favor of the plaintiff, against one James W. McMillan. The gravamen of the action is the alleged negligence of the sheriff in failing to levy upon and sell the property of the defendant in execution, which was subject to levy and sale.

In actions of this nature, the general rule as to damages, in the absence of statutory regulation, is, that the amount to be recovered must be commensurate with the extent of the injury suffered by reason of the sheriff's unintentional default or breach of duty. The actual injury sustained by the plaintiff is, in other words, the measure of his damages.—2 Greenl. Ev. § 599; *Gay v. Burgess*, 59 Ala. 575; Sedgwick on Dam. 634.

Hence, it is plainly competent for the defendant to show that the plaintiff has not been damnified—that he has sustained no damage for which he can justly claim compensation. This can be done by any legal proof showing that the defendant in execution was totally insolvent, in the sense that he owned no property which was liable by law to be levied on and sold for the payment of the particular debt reduced to judgment, upon which the execution was issued. If the defendant in execution owns no property except such as is exempt from levy and sale, any effort by the officer to execute the writ may properly be deemed to be fruitless and unproductive of benefit to the plaintiff. The officer is excused because the law does not exact of him the doing of a useless thing.— *Wilson v. Strobach*, 59 Ala. 488; *Bell v. King*, 8 Port. 147 (5 Smith's Cond. Rep. 221).

So, if the personal property of the judgment debtor is encumbered by a mortgage or landlord's lien for rent, or other lien, of the existence of which the plaintiff was chargeable with notice, and the amount of such encumbrance is shown to be in excess of the value of the property, it is equally manifest that no injury has been sustained, because a sale of the property would have realized nothing which could be applied in satisfaction of the judgment debt.— *Wilson v. Strobach*, *supra;* 2 Greenl. Ev. § 585; *Smith v. Hogan*, 4 Ala. 9ᵡ.

It is, nevertheless, the settled law in this State, that where a sheriff has two executions in his hands, the lien of the one being superior to that of the other, in an action against him for failing to make the money on the junior execution, he can not protect himself under a return of *nulla bona* upon it, by showing the existence of the superior lien, unless the execution creating it was *actually levied*. This principle was declared in *Bell v. King*, 8 Port. 147, *supra*, more than forty years ago, when it was said by the court: "It can not be endured that a

sheriff shall be allowed to excuse himself from one neglect of duty by interposing another." The rule would obviously be otherwise, under the principle last announced, where both executions had been simultaneously levied, or where there had been a levy of the older one.—*Smith v. Hogan*, 4 Ala. 97, 98.

The Code prescribes the manner in which a claim to property exemptions may be asserted. It may be done, in the first place, prior to any levy upon the property, or attempt to subject it to legal process. This is by written "declaration and claim," stating the property selected as exempt by proper description, signed by the owner, and verified by his oath.—Code, 1876, § 2828.

Where such declaration and claim are made and filed for record in the office of the probate judge in the county in which the property is situated, neither the sheriff nor any constable is permitted to levy an execution or other legal process upon it, unless the debtor's right to such exemption is contested by affidavit, denying its validity in the manner prescribed by section 2830 of the Code, and the bond, with sufficient security, as therein required, is first executed and approved by the levying officer. —Code, §§ 2830, 2828.

If no such declaration or claim of exemption, however, has been filed for record, it is especially provided by the statute that " no action shall lie against the officer *making the levy*, by reason that the property levied on is *exempt* to the defendant, or his family under the Constitution or laws of the State." Code, § 2833. The officer may, in other words, make the levy and force a claim of exemption to be lodged with him, which may be contested by the plaintiff in execution, as provided for by section 2834 of the Code.

We can see nothing in the statute which makes it the absolute and imperative duty of the sheriff to levy upon exempt property, where the debtor has failed to file his declaration and claim in the probate office. *Prima facie*, it may be said, perhaps, to be his duty to do so, as it is competent for the debtor to waive a privilege by refusing to assert his right of exemption.—*Gresham v. Walker*, 10 Ala. 370. But on this point, prior to our present system of statutory procedure regulating the subject, our decisions can not be said to be harmonious. *Renfro v. Heard*, 14 Ala. 23 ; *State v. Johnson*, 12 Ala. 840. It would certainly be the safer policy for the sheriff to make the levy, and more just to the execution creditor, because it enables him to contest the claim of exemption in a course of procedure prescribed with great accuracy of detail by the statute.—Code, §§ 2834, 2830. However this may be, it is very well settled, that, where a sheriff has legal process in his hands against a defendant, and fails to levy it upon property

shown to be in his, the defendant's, possession, or having levied it, discharges the levy without selling, the *onus* is shifted upon the sheriff to show a legal excuse for not levying or selling, as the case may be.— *Wilson v. Brown*, 58 Ala. 62, and authorities cited, p. 64; *Whitsett v Slater*, 23 Ala. 626.

The foregoing principles are sufficient to determine this cause upon another trial, which must be ordered for several erroneous rulings on the evidence.

It was error to permit the witness, Warwick, to testify that he, as sheriff, during his term of office, had returned sundry executions against McMillan, " no property found." No excuse was given for not proving this fact by the record, or a certified copy of it, as the legal effect of the evidence was to prove both the existence and contents of these executions. It is not the same thing as stating that, when sheriff, the witness made diligent search for property belonging to defendant and found none—a fact which it was permissible for him to prove. *Childs v. The State*, 55 Ala. 28; *Hames v. Brownlee*, 71 Ala. 132.

Nor should the court have permitted the same witness to be asked whether McMillan was solvent or insolvent. Insolvency is a legal conclusion following from certain facts and circumstances, from which it may be inferred. It can not be testified to as a collective fact. The circumstances or facts from which it is deducible must be proved.—*Brice v. Lide*, 30 Ala. 647; *Nuckolls v. Pinkston*, 38 Ala. 615.

It was competent to be proved, however, by evidence of executions issued on other judgments against McMillan, with the return of " no property found," and the court did not err in permitting this to be done.—*Loeb v. Peters*, 63 Ala. 243.

It was no defense for the sheriff that he declined to levy upon property in the possession of the execution debtor, because he honestly believed it to be exempt. When the property was pointed out to him by the plaintiffs' attorney, and he declined to levy upon it, he acted at his own peril. He was *prima facie* liable to the plaintiffs for the just value of such property, not exceeding the injury sustained, without regard to his motive in refusing to execute the writ according to its mandate. He could only protect himself by proving satisfactorily that the property so pointed out was exempt from levy and sale under legal process, or that it was so encumbered with liens as to render a levy upon it fruitless and unproductive of any benefit to the plaintiffs.

There was no error in admitting in evidence McMillan's schedule of exemptions, which he had prepared in conformity to the requirements of the statute, before any levy upon his property. Such " declaration and claim," properly prepared, verified and filed for record, is made by statute to be *prima*

[Warren v. Wagner.]

*facie* evidence of its correctness as against all the creditors of the claimant.—Code, 1876, § 2831.

The judgment must be reversed and the cause remanded.