# O'Neill v. Perryman.

*Bill in Equity to enjoin Collection of a Judyment, and to establish an Equitable Set-off.*

1. *Bill to establish set-off; when maintained.*—Where, under a plea of set-off or recoupment, the defendant recovers judgment against the plaintiff in an action at law, and the plaintiff has a cross demand against defendant which is not available in said action, he can, upon allegation of defendant's insolvency, maintain a bill in equity to establish his cross demand; and upon proof of such allegation is entitled to relief.

2. *Cross-bill; must be based upon matters germain to original suit.*—A cross-bill, being defensive in its nature, must be based upon matters germain to the original suit, and must be filed for the purpose of administering equities between the litigant parties arising from and connected with the subject matter of the original bill; and when a cross-bill seeks to bring into the litigation new and distinct matter, independent from that of the original suit, it is demurrable, and can not be maintained.

3. *Same; settlement of a partnership not obtainable on a cross-bill, when original bill seeks injunction of an execution and establishment of a set-off.*—When a bill is filed to restrain the enforcement of a judgment, and to establish as a set-off against such judgment a cross demand that was not available as a set-off in the action at law, a cross-bill seeking a settlement of a partnership alleged to have formerly existed between the complainant and respondent is demurrable, as being foreign and not germain to the subject matter of the original bill.

4. *Burden of proof on bill to establish a set-off.*—On a bill filed to restrain the enforcement of a judgment and to establish as a set-off against such judgment a cross demand that was not available in the action at law, when the complainant, by the evidence introduced, makes a *prima facie* case of the respondent's insolvency, the burden

[O'Neill v. Perryman.]

of proof is upon the respondent to show his solvency; and unless this burden is met, the complainant is entitled to the relief prayed for.

5. *Statement of accounts by register; what they should contain.*—In stating an account referred to him, a register in a court of chancery should give with his statement an explanation of the process by which the results stated were ascertained, and the explanation should be such as to be readily understood and passed on by the chancellor, in case of exceptions reserved to the statement, or by the supreme court, in the event of an appeal thereto.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill was filed by William E. Perryman against John O'Neill; and sought to establish an equitable set-off, and to restrain O'Neill from enforcing the payment of a judgment recovered against Perryman for $864. This judgment was recovered in the following manner : Perryman sued O'Neill for a debt of $185, evidenced by a promissory note. O'Neill filed a plea of recoupment and set-off claiming damages for the conversion of certain personal property by the plaintiff, Perryman. As the out-come of this plea, and the issue thereon, O'Neill recovered a judgment against Perryman for $864. The bill alleges the insolvency of said O'Neill, and seeks to set-off against said judgment recovered by O'Neill in the circuit court, the following alleged claims : (1st.) A judgment of $43.30 and costs recovered before W. T. Poe, justice of the peace, on July 26, 1889. (2d.) One-half of $246.16, that being the amount of the judgment, (together with interest thereon and costs of suit) obtained by one Goodell in the Birmingham city court against O'Neill and Perryman jointly, which said Perryman was compelled to pay on December 27, 1889. (3d.) The sum of $192, with interest thereon, from May 1st, 1888, for the rent of a certain house, which O'Neill leased from Perryman during the month of April, 1888. (4th.) The sum of $231, with interest thereon, from the 1st day of July, 1888, for the rent of a certain house, which said O'Neill and one Regan jointly leased from the complainant, and occupied during the months of May and June, 1888. (5th.) The sum of $209, with interest thereon, from April 1, 1888, as balance of the rent due by the firm of D. Kennedy & Co., of which O'Neill was a partner, for the rent of a house alleged to have been

occupied by said Kennedy & Co. from the 1st of July, 1888, to the 26th day of March, 1889.

The prayer of the bill was for the establishment of these several demands as equitable set-offs against the judgment recovered by O'Neill against complainant, and for an injunction to restrain O'Neill from the collection of said judgment. The complainant offered to do equity, and submitted himself to the jurisdiction of the court in that behalf.

The defendant moved to dismiss the bill for the want of equity, and also demurred to the said bill on the grounds, that the complainant had an adequate remedy at law; that said bill of complaint shows that if said claims were true and just, the complainant could have reduced the said claims to judgment in a court of record, and have set-off the same against the respondent's judgment; and because the said alleged items claimed by said Perryman against O'Neill are not matters of account which a court of chancery can be invoked to settle, but are purely matters of cognizance in a court of law. There were other grounds of demurrer, which it is unnecessary to set out.

The defendant, O'Neill, also filed an answer fully denying his insolvency and the existence of said alleged claims of Perryman against him. In said answer O'Neill set up, as to the first item claimed by Perryman, that he was never served with process from Poe's court, and asked to be allowed to set-off against the said alleged claim a sufficient sum due from the partnership of Perryman & O'Neill. As to the second item, the defendant set up, that he and Perryman were engaged in the refrigerator business, as partners, and that the partnership affairs have never been settled; that the said Goodell debt was a debt against the said partnership, and that Perryman was indebted to the said O'Neill on said partnership account in a sum more than sufficient to satisfy O'Neill's part of said Goodell debt. As to the next items, those for the rent of a certain house during the months of April, May and June, the defendant set up that the rent was paid by the making of certain repairs on the house occupied by him. As to the last item, the rent due by Kennedy & Co. the answer set up that the same has been full paid. The defendant asked that his answer be taken as a cross-bill, and prayed that the

[O'Neill v. Perryman.]

partnership affairs of Perryman & O'Neill be settled, and that the amount due said O'Neill on partnership account be ascertained, and a decree be rendered in his favor therefor. The complainant demurred to the cross-bill, on the ground that it set up matters which have no connection with the subject matters of the original bill, and which are independent and distinct subjects of litigation.

The cause was submitted on the demurrers to the original and cross-bill, and motion to dismiss. The demurrer to the original bill was overruled, as was also the motion to dismiss the original bill; and the demurrer to the cross bill was sustained. The defendant then amended his answer by striking out that portion making it a cross-bill, so as to make it a simple answer.

As shown by the testimony, the following facts were undisputed. That H. C. Goodell recovered a judgment against W. E. Perryman and John O'Neill, as partners, which was paid by Perryman, December 27, 1889; that O'Neill rented the Lincoln House from Perryman and occupied the same during the month of April, 1888; that O'Neill and one John Regan rented said house from Perryman and occupied the same through the months of May and June, 1888; that D. Kennedy & Co., of which John O'Neill was a partner, on July 5, 1888, executed to the complainant, W. E. Perryman, a lease for said Lincoln House for a period of 2 years, 7 months and 11 days—the date when said lease was annulled, and when Perryman re-entered, is a disputed fact; that Perryman obtained a judgment against D. Kennedy on promissory notes for the sum of $119.35 on September 9, 1889; that these claims of Perryman set up in his bill, if not liquidated and discharged as claimed by defendant, all existed and were past due at the time Perryman brought his suit in the circuit court against O'Neill, and at the time the judgment therein was rendered for O'Neill against Perryman on his plea of recoupment.

The testimony as to the disputed fact of O'Neill's insolvency is sufficiently stated in the opinion. O'Neill denies having been served with process in the suit in the justice of the peace court, and while he admits the correctness of the Goodell judgment, attempted to show by his evidence that Perryman was indebted to him, on partnership account, in a sum greater than his half of

said judgment. Perryman, however, testified that the partnership matters between him and O'Neill had been settled.

As to the rent for the Lincoln House from O'Neill for April, 1888, and from O'Neill and Regan for May and June, 1888, Perryman testified that said sums were owing him, after deducting all payments made by O'Neill and O'Neill and Regan. O'Neill, on the contrary, testified that he had done certain work on the house, and that Perryman had agreed that the repairs done should be considered as payment of the balance due on the rent for the months of April, May and June. He was corroborated in this testimony by two other witnesses, but these witnesses were impeached. The testimony in reference to the rent due by D. Kennedy & Company is sufficiently stated in the opinion.

The chancellor rendered a decree in favor of the complainant, and ordered that it be referred to the register to ascertain and report how much was due complainant on each of his said alleged claims, and how much, if any thing, was due defendant on his judgment, after deducting therefrom the amounts so ascertained to be due complainant.

The register held a reference and reported that there was due the complainant, 1st, on the judgment rendered in the court of Justice Poe, $59.20 ; 2d, on the Goodell judgment, $152.61 ; 3d, for the rent of the Lincoln House for April, 1888, $266.92 ; 4th, for rent due by D. Kennedy & Co., $92.14 ; 5th, for the rent of the Lincoln House for May and June, 1888, $318.78 ; and that after deducting all claims to be justly allowed complainant, there was a balance due to the defendant from the complainant of $195.65.

The defendant filed separate exceptions to each item as thus reported by the register. On June 23, 1893, the defendant's exceptions to the report were overruled, and on July 8, 1893, a decree was rendered by the chancellor declaring that said claims of the complainant, as reported by the register, be set-off against said judgment of John O'Neill, and the same be satisfied to that extent, and that said John O'Neill have and recover of said W. E. Perryman $195.65 ; and it was further decreed that said O'Neill pay the costs of the court.

From the several decrees in the cause, on demurrers

as well as on facts, the defendant appeals, and assigns the same as error.

Mountjoy & Tomlinson, for appellant.—Equity will not enjoin an action at law when the bill shows the complainant has a full and complete defense in the legal forum.—*Womack v. Powers*, 50 Ala. 5.

A court of equity will not interfere with a judgment of a court at law, or the decree or judgment of any court of competent jurisdiction, unless it is shown affirmatively that the party complaining, without fault or neglect on his part, because of fraud or of accident, or the act of his adversary, could not at the time of the rendition of the judgment or decree, present his cause of action, or his ground of defense, as the case may be, to the consideration of the court.—*Garrett v. Lynch*, 44 Ala. 683, s. c. 45 Ala. 204; *Moore v. Faggard*, 51 Ala. 525; *Howell v. Motes*, 54 Ala. 1; *Hart v. Life Asso.*, 54 Ala. 495; *Baker v. Pool*, 56 Ala. 14; *Beadle v. Graham*, 66 Ala. 102; *Collier v. Falk*, 66 Ala. 223; *Broda v. Greenwald*, 66 Ala. 538; *Norman v. Burns*, 67 Ala. 248; *Otis v. Dargan*, 53 Ala. 178; *Waring v. Lewis*, 53 Ala. 615; *Kirby v. Kirby*, 70 Ala. 370; *Weems v. Weems*, 73 Ala. 462; *Noble v. Moses*, 74 Ala. 604; *Waldrom v. Waldrom*. 76 Ala. 285; *Peterson v. Blanton*, 76 Ala. 264.

Ward & John, *contra*.—The equity of complainant's bill rests on the existence of two facts, which are averred therein—the insolvency of O'Neill, and his indebtedness to Perryman. In cases of this kind, the rule is, that a court of equity, by the exercise of its restraining powers, will intervene, and compel the one having the legal advantage to do justice.—High on Injunctions, §§ 243-4; Pomeroy's Eq., § 189, *T. C. & D. R. R. Co. v. Rhodes*, 8 Ala. 220; *Ingraham v. Foster*, 31 Ala. 133; *Tate v. Evans*, 54 Ala. 17; *Martin v. Mohr*, 56 Ala. 223.

The cross-bill sought to settle the partnership which is averred to have existed between O'Neill and Perryman; but the settlement of this partnership was in no wise germain to the subject matter of the original bill, and the demurrer thereto was properly sustained.—*Continental Life Ins. Co. v. Webb*, 54 Ala. 688; *Shelton v. Carpenter*, 60 Ala. 201; *Davis v. Cook*, 65 Ala. 617; *Tutwiler v. Dunlap*, 71 Ala. 126; *Whitfield v. Riddle*, 78 Ala. 104.

[O'Neill v. Perryman.]

The statement of the account of the register was sufficient, and will not be overturned except upon the same grounds and evidence that the court will set aside the verdict of a jury.—3 Brick. Dig. 397, § 488 ; *Mahone v. Williams*, 39 Ala. 202.

HARALSON, J.—1. Although the mere existence of mutual and independent demands, does not authorize the interposition of a court of equity to set them off against each other, yet, where there is some intervening equity which renders it necessary for the protection of the demand sought to be set off, that court will interpose to see that justice is done. In this case, the bill sets up the insolvency of the plaintiff in the judgment, and that complainant's demand against him would be lost, if he is allowed to enforce said judgment. This is recognized as a distinct equitable ground, entitling the complainant, the defendant in the judgment, to relief.— *Tate v. Evans*, 54 Ala. 17; *Martin v. Mohr*, 56 Ala. 223 ; *Wood v. Steele*, 65 Ala. 436; *Watts & Son v. Sayre*, 76 Ala. 399; *Glover v. Hembree*, 82 Ala. 324; 1 Pom. Eq., 189 ; High on Injunctions, § 245. It is also held, that when a cross demand, rightfully held, can not be made available as a set-off at law, it may be established as such in equity, on allegation and proof of the insolvency of the plaintiff in the judgment.—*Campbell v. Conner*, 78 Ala. 211 ; *Farris & McCurdy v. Houston*, 78 Ala. 257.

When the appellant, defendant at the suit of complainant in the law court, interposed his plea of recoupment or set-off against plaintiff's demand, the plaintiff could not reply against that plea a set-off of the claims he files this bill to protect. A set-off against a set-off can not be pleaded at law.—*Hill v. Roberts*, 86 Ala. 526–7 ; *Whitworth v. Thomas*, 83 Ala. 310. The bill was well filed, and the demurrer to it was properly overruled.

2. The defendant filed an answer in the nature of a cross-bill, the relief sought being the settlement of a copartnership which was alleged to have formerly existed between defendant and complainant, on the settlement of which, it was alleged, complainant would owe something to defendant. The cross-bill was demurred to, on the ground that it sought to bring into the litigation new, distinct and independent matter from that of the original suit. The demurrer was sustained, and the de-

[O'Neill v. Perryman.]

fendant amended his answer, by striking out, so as to change the answer and cross-bill to a simple answer.

A cross-bill loses its character as such, if it seeks to bring before the court other matters and rights distinct from those embraced in the original suit. Without this restriction, new matters without end might be introduced into litigation by cross-suits. In this instance it does not appear that the proposed cross-bill was necessary to do complete justice between the parties, and to administer the equities between them as connected with the subject matter of the original bill. There is no allegation in it that complainant is insolvent and unwilling to settle the alleged copartnership between him and dedefendant, if any existed, and was unable to pay any sum that might be found to be due and owing by him to defendant, on settlement thereof. The demurrer to it was properly sustained.—Story's Eq. Pl., §§ 630, 631, *Com. L. Ins. Co. v. Webb,* 54 Ala. 688; *Davis v. Cook,* 65 Ala. 617; *Whitfield v. Riddle,* 78 Ala. 104.

3. Coming to the proofs of the allegations of the bill : The complainant testified, that he had known defendant for several years, had had many transactions with him ; that he owned no property of which complainant was aware, and he had endeavored to ascertain if he did own any; that he had no money, and so stated, when he went into the business of manufacturing refrigerators with complainant ; that he had been sued on his obligations, judgments obtained against him and executions thereon returned no property found. This proof made a *prima facie* case of insolvency against him, which it became the defendant to overcome.—*Abbott v. Gillespy,* 75 Ala. 180. He attempted to do this but failed. He commenced by stating that he was solvent and paid all his debts, and yet admitted that there were unsatisfied judgments and outstanding claims against him in the hands of attorneys for collection; that the property he owned was in Shelby county ; that he owned 410 acres of land in that county, worth from two to three thousand dollars, and, perhaps, more. If he had stopped here, it would have appeared he was abundantly able to respond to complainant's demands ; but, on the cross-examination, he admitted that he had not "quite paid for the land in Shelby," but had paid for a part of it ; that he had bought 210 acres from one Wideman, for

34

[O'Neill v. Perryman.]

which he had a bond for titles only, and on which he had not.paid a dollar; that he had 160 acres clear, which he called his homestead, and this he got from a man by the name of Mansfield from Chicago, with whom he swapped some lots in that city for this piece of land ; that Mansfield came into defendant's store and said he had some land in Shelby, and if he could sell it he would return to Chicago ; that defendant went and examined the land, returned, consummated a trade with him for it, and they interchanged deeds, drawn up by themselves ; that he had never seen Mansfield before and did not know his first name, but was informed that he was a mechanic who had been working in a machine shop.   He did not remember who  were  the  witnesses to  his  deed received from Mansfield, nor from whom he, Mansfield, purchased the  land ;  that he made no  inquiry about the title but took his vendor's word for it; that he sent his deed to the land, by his nephew, Shaw, to Columbiana,  to be recorded, but Shaw had gone to Texas, and had neither  delivered the deed for record nor returned it ; that he had never paid any taxes on the land, and did not know how much was  due  on it.   On  this statement, one's credulity would be sorely taxed to  believe he owned and had a title to the Shelby land.   Besides, Perryman swears that defendant told him, that his wife owned some lots in Chicago, given to her by an old lady, whom she had taken care of, and that she had traded two of those lots for some land in Shelby county. It may be, if the deed had been produced, the title to the land would have appeared to be in Mrs. O'Neill.   On this and other evidence we find in the record, to which we have not referred, the insolvency of  defendant is regarded as satisfactorily established.

4.   Against the 1st and 2d items in the  register's account,  those  of  the   two judgments against defendant, he makes no further defense, than that of the ¨unsettled partnership between him  and  the  complainant. This, under the proper rulings of the court, he  was ¨not permitted to go into.   These two  items were, therefore, propely chargeable against him.

5.   The 3d and 5th in the  report are approved.   That the defendant occupied the  house,  under the written lease,  for  the time  alleged, is  shown, and not denied. To the balances.due on these accounts,  the complainant

testified, and he appears to have been careful in keeping his books. The defendant kept none himself, and his evidence is unsatisfactory. The defense he relies on is, that he made repairs on the leased building, in consideration of which, he testifies, complainant agreed to remit the rent that was owing, but this, the complainant denies. The character for truth of the two witnesses, on whose evidence, besides his own, the defendant relies to establish this fact, was impeached by complainant, and no attempt was made by defendant to sustain them. The evidence tends to show, that complainant paid for repairs on the building, such as he authorized, and on the whole, is satisfactory to sustain the findings of the register on these two items.

6. The evidence to sustain the 4th item,—that of $92.14, on account of rent by D. Kennedy & Co.—is not sufficient. The complainant, in his bill, stated that this item of indebtedness of defendant to him, was $209.05, as the balance remaining unpaid, on account of rent, at the rate of $150 per month, from July 1st, 1888, to *26th March*, *1889*,—the date he testified Kennedy & Co. left his house, on his demand. In his deposition taken in the cause, he testified as follows : "I rented a house on July 1st, 1888, to D. Kennedy & Co. The Co. was John O'Neill. I rented the house for $150, and it was occupied by them from July 1st, 1888, to *March 26th*, *1889*. \* \* The amount due on this lease is $209.05, with interest from March 26th, 1889." In his examination before the register, complainant testified : "I gave D. Kennedy & Co. orders to vacate the house, for the reason that they were behind with their rent. \* \* I don't remember exactly when they vacated the house. They vacated it sometime about *the 15th of January*, *1889*. I don't remember how much rent was due on the building at that time, but I think they owed about $180, as near as I can remember. They may have owed as much as $225—I don't remember. I knew somebody paid me during the month of January. I see that D. Kennedy (examining book) paid me, January 9th, $115, January 10th, $148.45, January 12th, $18.45, January 21st, $25., \* \* February 1st, $6.55, February 5th, $25.00. \* \* They owed me at the time they moved out $210.05."

The difference in these statements is confusing. If

[Beadle *et al.* v. Seat.]

the first is correct, the defendant would owe complainants the full amount claimed by him ; but, if the latter statement be the correct one, defendant would owe nothing on account of the Kennedy & Co. rent, but complainant would have been a little overpaid. All that defendant claims in respect to this item is, that it was fully paid. Upon the whole evidence, without reviewing it, we hold that the last statement of complainant, as to the time when Kennedy & Co. vacated the premises, is to be taken as the correct one, and that complainant is not entitled to any credit on this item. Deducting this from the credits allowed him, and the balance remaining due by him on his judgment to defendant, is $287.79 as of March 29th, 1893—the date of the register's report—instead of $195.65, as found and reported by the register. As thus corrected, the decree is affirmed.

7.    The register in the statement of the account in this case, gives results without processes by which they were ascertained. This is an improper manner of stating such an account, and one so rendered ought to be rejected by the court *ex mero motu*, or on an objection made to it by either party. Such accounts should be so fully stated, under rules 90 and 90a., accompanied, if necessary for a proper understanding of the account, by such explanations in the report of the register, as that the chancellor, in case exceptions are taken to them, may be enabled readily to understand and pass on them, and so, in case of appeal, to this court, we may be enabled to do the same thing. Otherwise, we must be involved in confusion and very unnecessary labor, which we may, if these rules are not observed, decline to undertake.

Corrected and affirmed.

