Read, J.
"Upon the above state of facts arise the following three questions:
1. Where there is a senior judgment, and no levy within the year, a junior judgment and levy within the year, which gives it precedence over the senior judgment, and an intervening mortgage which has precedence over the junior judgment, which lien shall prevail—that of the senior judgment, that of the mortgage, or the junior judgment ?
2. Prom what time does a mortgage take effect—from the date of its delivery to the mortgagee, or from the time it is delivered to the recorder to be entered upon record ?
3. If from the time of its delivery to the recorder for record, which has the precedence—a mortgage delivei-ed for record on the first day of the term, but before the court has actually opened, or a judgment recovered at the same term ?
The case now under consideration has had a singular fate. It was one of the first cases to arise, and it involves all three of the above important questions, and yet all three of these questions, one after the other, have been decided in three several cases in court in bank, before this has come on for disposition.
The first-named proposition is known to the profession as the triangular question; it was decided in the case of Brazee v. Bank of Lancaster, 14 Ohio, 318, that in such ease the senior judgment had precedence both over the junior iudgment and tho-mortgage, *450 and tho mortgage to the junior judgment. Or, in other words, that each lion should prevail according to its age. If it be attempted to settle the question upon the principle of superiority, it runs in a circle and. produces no result. If the junior judgment takes it from the senior judgment, then the mortgage would take it *from the junior judgment, and the senior judgment from tho mortgage, and thus perpetually without a conclusion. If it be attempted to reason it out by interposing intervening liens, it results in a triangle of equal equities, without any circumstance to determine in favor of either. If it be said that the intervening mortgage should protect the senior judgment because it was superior to the junior judgment and inferior to the senior, so it might, with equal reason, bo said that the senior judgment should check the mortgage in favor of the junior judgment, or that the junior judgment should protect the mortgage from tho senior judgment. The court, therefore, felt the necessity of establishing a rule, and that which was considered least objectionable was adopted, to wit, that each should have precedence according to age. This, too, has some show of reason in the fact that the lien of the senior judgment extended to the whole estate mortgaged, and the mortgagee took subject to such lien, and would hold only as to the balance of the estate after satisfying the senior judgment, and the lien of the junior judgment attached only to the balance left, if any, after satisfying the mortgage out of the balance left by the senior judgment. Or, in other words, the junior judgment only attached to the equity of redemption in that portion of the interest covered by the mortgage, after satisfying the lien of the senior judgment.
The second proposition was decided in Stansel v. Roberts, 13 Ohio, 148, and also in Mayham v. Parker et al., 14 Ohio, 431, where it is decided that a mortgage under tho statute, shall take effect from the time it is delivered to the recorder to be entered of record ; that the recording or delivering for record, is a part of the execution ; and hence, before that act is done, that the instrument is not a mortgage, and therefore that notice that certain written instruments exist which may become mortgages by delivery for record, will not prevent another party from taking a like instrument .and making it a mortgage by delivering it for record ; and -when it once becomes a mortgage by such delivery, if it bo *prior in time, it will take precedence ander the statute.
*451 The fact of notice, that there are other mortgages unexecuted for lack of delivery for record, will not destroy its validity or priority. Before execution by delivery for record, they are, at best, mere agreements for a mortgage; and as- the right to take a mortgage is equal among all, he who first succeeds, will prevail. But it may be argued that if such unexecuted mortgages could be considered as agreements for a mortgage, they would at least confer an equity; and that a person who should, with notice of this equity, acquire a legal mortgage, ought to be treated as a trustee, and to hold for the benefit of the equity. This would be the result, if we reasoned upon the ordering doctrine governing equities; but this conclusion is disturbed by the statute, which stops in and declares in such case that mortgages shall take effect and have precedence from the time of delivery for record. The court has declared, therefore, in obedience to the statute, that they shall have no effect, either in law or equity, before such delivery. Mortgages are bare securities to protect either equitable or legal rights. They are neither the legal right nor the equity, but; an incident which attaches to some substantial right or equity. The right or interest to which a mortgage may attach is absolute; a mortgage is secondary and dependent. Destroy the debt or right to which the mortgage attached, and it dies; and without some right to which it can attach, it could never exist. It is, in its nature, an incident. I do not say that the incident may not sometimes constitute the entire value of the substance; but it does not follow, therefore, that the same principles should govern both. In fact, we know that they do not. But it was the tendency of the courts to regard them as governed by the same principles that induced the legislature to interfere. The old doctrine was, that a mortgagee was to be treated as a purchaser, and it is so now in reference to a secret equity; and hence, if he acquired an equity only, a subsequent and legal mortgagee, with notice, was to be treated as a purchaser with notice of an existing equity. The *whole matter is this: how shall persons
having absolute rights and equities for money, secure its payment by fixing a lien upon the property of the debtor? All have an equal right to payment and to security. The court has said, therefore, that he who first takes a security which is legal, shall have its benefit. But it is said that, upon principles of equity, he who first makes the effort to get a mortgage security shall *452 havo his debt first satisfied; and that if any body else knows that this effort to take security has been made, though it bo ineffectual, and actually does take security for his own debt, that the attempt shall prevail over the completion of the act, or at least permit the attempt to be subsequently completed, and then give it priority. But as the property of the debtor should be subject to payment of all his debts, and all his creditors have an equal right to be paid, we see no hardship in holding that he who would secure his own debt over others, should bo hold to acquire such precedence by a compliance with every requisite necessary to give him such right. Nor do we see why a court of equity should help out a lack of such compliance to withdraw the property from other creditors who have an equal right to payment. But it is said that a prior debt attempted to be secured upon property, should have a-prior equity over a debt subsequently contracted, and secured, with notice, upon the same property. A case of fraud might exist, which would give relief in equity, as where the design in contracting the debt and. getting a mortgage, and having it delivered first, was to cheat the first mortgagee. But where debts are contracted in good faith, and mortgage security is honestly taken, first in time is first in right. But it is said that this construction of the statute makes men’s rights depend oftentimes upon swiftness of foot. The answer to this is, that the- legislature have the right to fix the nature and extent of mortgage liens, and to declare what shall bo requisite to con-' stitute a mortgage. But it is an old maxim, that the law aids the vigilant, that superior diligence is to be favored, and that in many cases, first in time, first in right, whether this depends *upon swiftness of foot, or wakefulness of eye. The plain truth is, it was found necessary for the good of all, to havo some fixed rule. That this may be more swiftly complied with by some than with others, is no argument against it. Thus, while we are perfectly satisfied that we have construed the statute according to its letter and spirit, we regard the rule thus established as having reason and convenience to support it. It puts at rest all the vexed questions as to procedure, and enables all persons certainly to know whether the property of persons to whom they extend credit is incumbered or not, without being involvod in the vexed questions of prior equities and notice.
*453 As to the third question, it was decided at this term, in the case of Foilott v. Hall et al. It was held, in that case, that a mortgage delivered for record on the first day of the term at which a judgment was rendered, but before the court was actually convened and opened, had precedence over the lien of such judgment.
We have reported this ease merely to assert and reaffirm the decisions already made upon these vexed questions, with the hope that they may be regarded as permanently settled.
Birchard, C. J.,
to the point last decided, giving a mortgage delivered for recoi’d on the first day of the term of a court, but before the opening of court, a preference over a judgment rendered at that term, dissented.