(Cincinnati Superior Court, June Term, 1890.)

HENDERSON-ACHERT LITHOGRAPHING CO. v. BELFORD, CLARKE, & CO.

---

*Note given for account does not extinguish Account—*

1. A note given for an account does not

extinguish or discharge the account unless such is the express agreement of the parties, and the burden of showing such agreement is upon the debtor.

*Note Merely Extends Time of Payment—*

2. The acceptance of a note for an account merely extends the time of payment of the debt; and if the note is not paid when due suit can be brought upon the note or the account.

*Suit on Account—Return of Notes—*

3. Suit may be brought upon an original account for which notes have been given and the time extended at any time, for any reason, the contract extending the time of payment is lawfully annulled or rescinded; and it is sufficient if the notes are returned at any time up to the day of trial.

*Purchase by insolvent debtor—*

4. The purchase by an insolvent buyer, who conceals his insolvency with intent to injure the vender is fraudulent and voidable, but a purchase under like circumstances, save that such intent is absent, is not in law fraudulent. The simple failure to disclose a condition of insolvency does not imply a purpose to defraud.

*Fraud—Presumption of consequences—*

5. Notwithstanding fraud must be proved and not presumed, there is a presumption that every reasonable man expects and intends the ordinary and probable consequences of known causes and conditions.

*Presumption of intention to defraud—*

6. The intention of a purchaser not to pay for goods may be presumed when he has knowledge of his own insolvency and inability to pay for them; and such intention may be inferred from the mere fact that the purchaser had undisclosed knowledge of his gross insolvency, but such inference may be rebutted.

*Rule as to giving note by insolvent debtor—*

7. The giving of notes by defendants in settlement of an account without intent to defraud, although knowing themselves to be insolvent, is not fraud in law, where there was no concealment of the insolvency, but simply a failure to disclose it, unless the insolvency was so gross as to lead to the presumption of an intent not to pay.

*Facts justifying disregard of notes—*

The fact that plaintiffs were induced to accept notes in settlement of an account against defendants upon receipt of a letter representing that there was about to be an increase of capital stock, when there was neither intention nor expectation of increasing such stock, justifies plaintiff in disregarding the notes and suing on the original account.

*Right to sue at once upon account—*

9. Where an account was due for which notes were given to extend the time of payment, and the holder was induced to accept such notes by false representation, or fraudulent concealment by the defendant, the plaintiff had a right at once to sue upon the original account.

Judgment affirmed in general term, January, 1891, and by supreme court without report, 52 Ohio St., 668, 33 W. L. B., 168.

---

Charge to the Jury.

HUNT, J.

Gentlemen of the Jury: This is an action in which the plaintiff, the Henderson-Achert Lithographing Company, seeks to recover from the defendant, Belford, Clarke & Company, on a certain account set forth in the petition for lithographing work, the sum of $2,988, with interest from August 19, 1889.

The defendant files an answer in which it denies that it is indebted to the plaintiff in the manner and form so averred in the petition, and in any sum whatever, and denies each and every other allegation in the petition except the averment of the corporate capacity of the parties. It is further alleged as a defense that all the accounts between the defendant and the plaintiff were closed by the notes long before the commencement of this action, and that none of the notes were due at the time this action was begun.

The plaintiff, for reply, says that three notes, one for one thousand dollars, dated Chicago, July 11, 1889, at three months after date, another for fifteen hundred dollars dated Chicago, August 6, 1889, due three months after date, and a third note dated Cincinnati, August 1, 1889, for $448.09, at three months after date, were given to the plaintiff by the defendant at or about the dates named, covering the amount of the account set forth in the petition, and that the notes were received and accepted by the plaintiff only in conditional payment of the account, and not otherwise in any way. There is a further averment, that at the time the defendant gave the notes which operated as a conditional payment, extending the time to the dates of their maturity, the defendant was, with the knowledge of its officers, hopelessly insolvent, which fact was unknown to the plaintiff whose officers supposed the defendant to be solvent, relying upon the statements made by the defendant to the plaintiff on May 14, 1888, that the defendant was about to add two hundred and fifty thousand dollars to its cash capital, and that the officers of the defendant failed to disclose their insolvency to the plaintiff, and failed to notify the plaintiff that no such sum had been added to the cash capital.

There is still further averment that as another ground for a rescission of the contract which is to be assumed from the acceptance of the notes, that the defendant by letter dated 14, 1888, represented that it was about to add to its capital the sum of two hundred and fifty thousand dollars, thereby representing to the plaintiff that it had made arrangements which

would enable it to add that sum to its cash capital, all of which representations were false, and that the defendant had neither the intention nor any expectation of being able to add such sum to the cash capital; but the plaintiff, believing them to be true, extended the time of the payment of the indebtedness; and when it discovered the alleged fraud and failure to disclose the falsity of such statements and representations, the plaintiff rescinded any agreement to be inferred from the acceptance of said notes, and so notified the defendant forthwith, and has returned the notes to the defendant.

When a note is given for an open account, it does not extinguish or discharge the account unless such is the express agreement of the parties, and the burden of showing such an agreement is upon the debtor. In the absence of such agreement, the acceptance of a note merely extends the time for the payment of the debt; and if the note is not paid when due, suit can then be brought either upon the note or on the account; and, further, if for any reason, the contract extending the time for the payment of the debts is lawfully annulled or rescinded before the note matured, then suit may be brought upon the account at once, and if the plaintiff in this case had a legal right to disregard the notes, and sue upon the account, it was not necessary for the plaintiff to return the notes at any time up to the day of trial.

The defendant, in its answer, denies each and every allegation contained in the petition except the averment of corporate capacity, although there is a further averment that all accounts between it and the plaintiff were closed by notes before the commencement of the action, and that none of the notes were due before the action was begun. It is true there is a general denial in the answer, which put in issue the allegations contained in the petition except as to the averment of corporate capacity, but it is conceded by all the parties to this suit that the account itself is correct, and the defense is that the account was settled by certain promissory notes which had not matured at the commencement of the action.

The contention of the plaintiff is:

First: That the notes in question were received and accepted by the plaintiff only as conditional payment.

Second: That at the time the defendant gave the notes, which it is claimed operated as a conditional payment extending the time to the dates of their maturity, the defendant was. to the knowledge of its officers, hopelessly insolvent, which fact was unknown to the plaintiff, whose officers supposed the defendant to be solvent. On May 14, 1888, there was a statement made by defendant to plaintiff that the defendant was about to add two hundred and fifty thousand dollars to its cash capital, and that the officers of the defendant failed to disclose its insolvency to the plaintiff, and failed to notify the plaintiff that no such sum had been added to its cash capital.

Third: Because the defendant, by letter dated May 14, 1888, represented to the plaintiff that it was about to add to its cash capital the sum of two hundred and fifty thousand dollars, thereby representing to the plaintiff, as it is claimed by the plaintiff, that it had made some arrangements to enable it to add that sum to its cash capital, all of which representations, it is claimed by the plaintiff, were false, and that the defendant had neither the intention or any reasonable expectation of being able to add such sum to its cash capital, but the plaintiff believing the representations as alleged to be true when it extended the time of the payment of the indebtedness.

Fourth: When the plaintiff discovered the fraud and failure to disclose the falsity of such statements, the plaintiff rescinded the agreement to be inferred from the acceptance of said notes, and notified the defendant forthwith, and returned the notes to the defendant.

The burden of proof, so far as these allegations are concerned, is upon the plaintiff, and before the plaintiff can recover in this form of action the jury must be satisfied that the allegations in the reply on which the plaintiff relies for a rescission are true, and are fairly shown by a fair preponderance of all the evidence.

While it is true that an intention on the part of a purchaser of goods not to pay for them existing at the time of the purchase, and concealed from the party selling, is unquestionably such fraud as will vitiate the contract, it is none the less true, on the other hand, that where no such fraudulent intent exists, the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown or undisclosed to the seller, will not vitiate the purchase. Even, therefore, if it should be shown by a fair preponderance of the evidence that the defendant, Belford, Clarke & Company, had knowledge that its debts exceeded its assets, though the fact be unknown and undisclosed to the Henderson-Achert Company, it will not of itself avoid the contract, for it may be stated, as a general principle of law, that whether a purchaser's failure to disclose his known insolvency is fraudulent or not, depends upon the intention of the purchaser, and whether that intention was to pay or not to pay. That is a question of fact which the jury must determine from

all the evidence in the case

In order, therefore, to reach a correct conclusion in this case, there are certain presumptions which the law recognizes, and which are entitled to be considered by you; and while it may be said that fraud must be proved and will not be presumed, there is a presumption that every reasonable person expects and intends the ordinary and probable consequences of known causes and conditions. Hence, if a purchaser of goods has knowledge of his own insolvency and of his inability to pay for them, his intention not to pay should be presumed, or the insolvent purchaser, without any reasonable expectation of ability to pay, should be presumed to intend not to pay, or an intention might be inferred from the mere fact that the purchaser had disclosed knowledge of his gross insolvency. It may be said, in brief, that the purchaser of goods by an insolvent buyer, who conceals his insolvency, with intent to injure the vendor, is fraudulent and voidable, yet a purchaser under like circumstances, save only that such intent is absent, is not in law fraudulent. The intent to injure must be of the essence of the fraud, and if that is absent it is wholly immaterial whether the insolvency of the purchaser was known to himself. It is true that knowledge by the purchaser of his own insolvency is necessary to establish the fraud, yet such knowledge of itself is entirely innocent. It is only when connected with the concealment of a fact that fraud is shown, and a distinction is made between the concealment of a fact and the failure to disclose a fact. The former implies a purpose, a design; the latter does not. The concealing of insolvency for the purpose of making a purchase may well avoid a contract, for it is the intention to injure. But the simple failure to disclose a condition of insolvency does not imply that purpose or design. In one case there is an act of concealment that involves an intellectual operation, the concealment of a purpose from which an intent may be inferred; the other is merely passing, and may be the result of causes and circumstances which do not involve intent.

It has been illustrated by the supreme court that where an insolvent merchant is engaged in an honest effort to retrieve his fortune, the appearance of wealth indicated by his stock in trade is not equivalent to a representation of solvency, and one who gives him credit without inquiry has no right to complain of fraud. We have thus indicated the rule where insolvency exists at the time of the transaction, for in this case it is claimed by the plaintiff that the defendant was hopelessly insolvent, and that the fact was known to its officers.

As we have said, the burden of proof to show insolvency of the defendant is upon the plaintiff, and it will be your duty to consider any evidence that may have been introduced touching directly the condition of Belford, Clarke & Company, and as to the condition of their assets and liabilities, as the same relate back to the time of this transaction, and any and all evidence that may have been introduced which may show the solvency or insolvency of the defendant at the time of the execution of the notes. Some evidence has been introduced touching the assets and liabilities of the firm in other states, and the depreciation of the assets by reason of the failure This evidence may be considered by you in connection with other testimony on this branch of the case, in reaching a correct conclusion as to the financial condition of Belford, Clarke & Company at the time of the transaction in question. If, therefore, the defendant, Belford, Clarke & Company, was in a condition of insolvency and knew its inability to meet the notes, the intention not to pay the notes might be presumed; or if Belford, Clarke & Company were insolvent without any reasonable expectation of ability to pay the notes at the time the obligation was contracted, or if Belford, Clarke & Company had undisclosed knowledge of gross insolvency, an intention not to pay might be inferred from that latter fact, if shown, but the inference may be rebutted by other facts and circumstances, if such other facts and circumstances have been shown; for it would not have been a fraud in law for the defendants to have given the notes if the intent did not exist to defraud, although the defendants were insolvent, and there was no concealment, but simply a failure to disclose it to the plaintiff, provided that the insolvency was not so gross as to lead to the presumption of an intent not to pay.

It is further contended by the plaintiff that the defendant, by letter dated May 14, 1888, represented to the plaintiff that it was about to add the sum of two hundred and fifty thousand dollars to its cash capital, all of which representations were false; that the defendant had neither the intention or any reasonable expectation of being able to add such sum to its cash capital.

It is incumbent upon the plaintiff to show by a fair preponderance of the evidence that these allegations were true; that the defendant had neither the intention or any reasonable expectations of being able to add that sum to its cash capital. The letter in evidence, divorced from any other circumstance, is not predicated on an existing fact, and would not, of itself, be sufficient to justify a recovery in this suit, but you will consider the letter in connection with any other evidence bearing

upon it, and if you find that the defendant did, by letter dated May 14, 1888, represent to the plaintiff that it was about to add the sum of two hundred and fifty thousand dollars to its cash capital, and that such representations were false, and that the defendant at the time had neither the intention or any reasonable expectation of being able to add such sum to its cash capital, and if you find that afterward, induced the plaintiff in whole or in part by such false statements, if any were made, to accept the notes, the plaintiff, when it discovered the falsity of such statement, had the right to disregard the notes and sue upon the account for which the notes were given, and your verdict should be for the plaintiff. But, on the other hand, if you find that when such statements were made at the time of the transaction, the intention existed to pay the notes, and that there was reasonable expectation of being able to add such sum to its cash capital, and that the plaintiff was not thereby induced in whole or in part to accept the notes, then the plaintiff can not recover in this action and must rely on the notes for a recovery of the indebtedness.

The fact that the debt is not disputed is not material in this form of action, because a verdict for the defendant would not extinguish the debt. The plaintiff would then be remitted to his action on the notes.

The sole controversy in this case relates to the fact whether the notes were obtained as alleged in the reply by the fraudulent representations or the fraudulent concealment of the defendant by which, in whole or in part, the plaintiff was induced to accept the notes.

The law may be condensed in this statement; if the account was due when the defendant gave the notes and the plaintiff was induced to accept the notes, thereby extending the time of payment, by any false representation or fraudulent concealment by the defendant, the plaintiff had a right at once to sue upon the original account, and your verdict will be for the plaintiff. But if you find, on the contrary, from all the evidence in the case, under the rules I have given you, that these notes were given in good faith by the defendant, and so accepted by the plaintiff in the ordinary course and custom of business between the parties, and that there was no intention to defraud, although the company may have subsequently failed, then your verdict must be for the defendant; and you may to this end consider the mode and manner in which business was transacted between the parties, the character of the business itself, the length of time intrevening between the receipt of this letter and the execution and delivery of the notes, and what influence it may have had in securing

the notes, the conversations in Chicago or elsewhere, relating to the subject, the receipts relating to the two notes, if any have been produced; the conduct o fthe parties, and their confidence, as may reasonably be inferred from their business relations and dealings, and any and all facts relating to the case, as well as to the reasonable inferences which may be drawn from the facts shown, to show what was the intent of the defendant at the time the notes were given, or in other words, the state of mind, of the parties to the transaction.

It will be your duty, gentlemen of the jury, to consider these things solely upon the law and evidence. The solemn obligation which yo uhave taken demands this of every juror. It is your exclusive province to measure the weight of the evidence to determine what weight and credibility should be given to the testimony, and ascertain, if possible, how far his interest, if at all, may have influenced the evidence of any particular witness, and, in short, as men of judgment, ripened by experience, reach such a conclusion as will be justified by the law and the evidence under your oaths.

It is your duty to consider the case solely, as I have said, from the law and the evidence given; and the solemn obligation which you have assumed demands this of every juror, and the law will not be content unless there is a conscientious discharge of this duty.

Mr. Wilby: "I want to except to the charge that actual fraud is necessary, wherever it is given. I want to except to the charge that there must exist the intention to defraud."

Mr. Jackson: "I wish to reserve an exception to the giving of all the charges asked by the plaintiff, and the refusal to give those which I asked and which were not given, and all the charge in regard to the letter of 1888, and also the last portion of your honor's charge in regard to reasonable inference."

And thereupon the jury retired for deliberation and returned a verdict for plaintiff. And the defendant duly filed its motion for a new trial on the grounds therein stated, which the court overruled and rendered judgment upon said verdict.

Plaintiff's request to charge:

(1.) I charge you that when a note is given for an open account, it does not extinguish or discharge the account unless such is the express agreement of the parties and the burden of showing such an agreement is upon the debtor. In the absence of any such agreement, the acceptance of a note merely extends the time for the payment of a debt; and if the note is not paid when due, suit may then be brought either on the note or the account. And, further, if for any reason the contract ex-

tending the time for the payment of the debt is lawfully annulled or rescinded before the note matures, then suit may be brought upon the account at once.

(2.) I charge that if you shall find from the evidence that the defendant, when the notes referred to in the answer were given, had no reasonable expectation of being able to pay them when they fell due, because of a condition of insolvency known to the defendants or otherwise, and failed to disclose this fact to the plaintiff, who relied upon the supposed solvency of the defendant, and that the defendant would pay said notes, then your verdict must be for the plaintiff, with interest to the first day of this term; but the plaintiff must establish the fact that the reasonable expectation of not being able to pay them when they matured, because of the insolvency or otherwise of the defendant, did not exist at the time the notes were executed.

(3.) I charge you that if you shall find from the evidence that in May, 1888, or at any time prior to the taking of the notes described in the answer, the defendant, by one of its officers, stated to the plaintiff that it intended to add $250,000 to its cash capital if, in fact, it is shown by a fair preponderance of the evidence that defendant had no such intention, or if it is shown that this statement was made recklessly, without any intention of carrying it out; and if you find that afterward, induced in whole or in part by this statement, the plaintiff accepted the notes, then I charge you that the plaintiff, when it discovered the falsity of such statement, if the falsity of any such statement is established, had the right to disregard the notes and sue upon the account for which the notes were given, and your verdict should be for the plaintiff.

I charge you that it is a rule of evidence that ordinarily where witnesses are of equal credibility, a witness who testifies to an affirmative entitled to credit in preference to one who testifies to a negative, because the latter may have forgotten what actually occurred, while it is impossible for the former to remember what never happened.

I charge you that you are entitled in reaching a conclusion to make any fair and proper inferences from the evidence in the cases for some facts, such as what was the state of a person's mind at a given time may not from their nature be proven absolutely, but may sometimes be inferred from other surrounding facts and circumstances.

(4.) To entitle plaintiffs to rescind the implied agreement to extend the time of payment to the maturity of the notes, it is not necessary for them to show that their sole, or even predominant, motive in extending the time of pay-

ment was the fraudulent representations or fraudulent concealment of defendants if any such fact existed; it is enough if such fraudulent representations and fraudulent concealment, if established, had material influence on plaintiffs, although combined with other motives in accepting the notes in question.

(5.) I charge you that if the plaintiff had, when this suit was brought, the right to disregard the notes, under the law which has been given you, and sue upon the account, it was not necessary for the plaintiff to return the notes at that time, but the law was sufficiently complied with by the return of the notes at any time, even up to the day of trial.

Defendant's requests to charge:

(1.) The plaintiff cannot recover unless it shows by a preponderance of evidence that the defendants were guilty of fraud at the time when the notes were given.

(2.) Fraud is never presumed, but must be established by a fair preponderance of proof.

(3.) It would not be fraud for the defendants to give the notes, although they were insolvent at the time, knew that fact, and failed to disclose it to plaintiff.

(3.) The letter of May 14, 1888, affords of itself no ground for the rescision of the contract.

If you find that at the time the letter was written for the defendants intended to add $250,000 to their capital, the letter should be disregarded in your further consideration of the case.

(4.) The jury are instructed to consider no testimony save that allowed by the court. Questions asked by counsel, but held by the court to be incompetent, are not evidence, and must not be considered by the jury for any purpose whatever. Nor are such questions proper subject of comment by counsel in the argument.

(10.) If the jury find that the defendant was insolvent at the time the receiver was appointed, that fact of itself would not authorize a finding that the defendant was insolvent at the time the notes were given.

(18.) The failure to disclose insolvency is not equivalent to concealment of insolvency. A man, though grossly insolvent, has a right to go in business and obtain credit without disclosing that fact to his creditors.

It is only where the failure to disclose is accompanied by acts of deception, which must be proven by evidence, that concealment arises, which amounts to fraud.

(11.) The fraud charged by plaintiff is actual fraud—that is, fraud in fact. To constitute such fraud, there must have been an intention to deceive. An honest misrepresentation would not be sufficient; nor would a

mere general intention to defraud creditors be sufficient.

The jury must find an intention to deceive the plaintiff existing in the mind of defendant at the particular time the notes were given. If the jury do not find that fact established by a fair preponderance of the evidence, the verdict must be for the defendant.

(8.) If you find that defendant intended to pay the notes when they were given, your verdict must be for the defendant, no matter whether it was solvent or insolvent at the time, unless the misrepresentations alleged in the reply are shown.

(9.) If you find that defendant gave the notes, and did not intend to pay them at the time, that would be a fraud; but the burden of showing such non-intention is upon the plaintiff, and the fact of such non-intention must be found by the jury from competent evidence offered in the case.

(4.) If at the time the letter of May 14, 1888, was written, the defendants intended to add $250,000 capital to their business, but subsequently failed to do so, the defendants were not bound to notify plaintiff that they had not done so, and the failure to so notify plaintiff would not constitute a fraud.

(5.) The fact that the debt is not disputed is not material. A verdict and judgment for defendants would not extinguish the debt. The sole controversy in the case is whether the notes were obtained by fraud. If you find that there was no fraud, your verdict must be for defendant.

(11.) There is no evidence to show insolvency of defendant at the time the notes were given.

Your verdict must be for defendant unless you find some misrepresentation, known to be false by defendant, not known to be false by plaintiff, which induced the plaintiff to accept the notes, and which was made at or before the time the notes were accepted.

(12). There is no evidence tending to show any misrepresentation whatever, except the letter of May 14, 1888, which I charge you is not sufficient of itself to justify a rescission of the contract on the part of plaintiff.

(12 1-2.) If the jury find that at the time the letter of May, 1888, was written, the defendant did not intend to add $250,000 to its capital stock, nevertheless the letter itself would not authorize a rescission unless in 1889, when plaintiff accepted the notes, the jury find that plaintiff did not know that the capital had not been added, but relied on the promise made in 1888.

(13.) There is no evidence whatever to show that in May, 1888, the defendant did not intend to add the $250,000 capital.

The jury are not authorized to find from the evidence introduced that the defendant did not intend to add said capital.

*Kramer & Kramer, Jackson & Swarts,* and *Lowery Jackson,* for Plaintiff in Error.
*Wilby & Wald,* for Defendant in Error.

In the supreme court, *Kramer & Kramer, Jackson & Swarts,* and *Lowrey Jackson,* for Plaintiff in Error, cited: 1 Bigelow on Fraud, 1888 Ed., 81, 82, 83, and cases cited; *Durbin v. Fisk,* 16 Ohio St., 533; *Woolen Mills Co. v. Titus,* 35 Ohio St., 253, 256; *Merrick v. Boury,* 4 Ohio St., 60; *Wise v. Miller,* 45 Ohio St., 388, 397; *Miller v. Woods,* 21 Ohio St., 485; *Mucklols v. Pinkston,* 38 Ala., 615; *Babcock v. Bank.* 28 Conn., 302; *Phillips v. Bullard,* 58 Ga., 256; *Hall v. Ballon,* 58 Iowa, 585; *Sledge v. Scott,* 56 Ala., 202; *McCormick v. Joseph,* 77 Ala., 236; *Ohio Coal Co. v. Davenport,* 37 Ohio St., 194, 197; *Barrett v. Hart,* 42 Ohio St., 41; *Sherer v. Piper,* 26 Ohio St., 476; Wharton on Evidence, sec. 1090; 2 Starkie on Ev., 38; *White v. Cotzhausen,* 129 U. S., 329; 1 Greenleaf Ev., sec. 441; *Fire Department v. Buhler,* 35 N. Y., 177; *Hyde v. Melvin,* 11 Johns., 521; *Mohlson's Book v. Boardman,* 47 Hun., 135; *Hennessy v. Farelly* 13 Daly, 468; *Tomlin v. Hilyard,* 43 Ills., 300; 1 Wharton Ev., sec. 507 and cases; Laws on Expert Ev., 497, Rule 65 and cases; Laws on Expert Ev., p. 164, *rule* 33 *and cases; Ib., p., 479, rule,* 65; *Stillwater Turnpike Co. v. Coover,* 26 Ohio St., 520; *Railroad Co. v. Schultz,* 43 Ohio St., 270; *Legg v. Drake,* 1 Ohio St., 286; *Board of Education v. Mills,* 38 Ohio St., 383; *Grove v. Hodges,* 55 Pa. St., 518; 1 *Bigelow on Fraud,* '88 Ed., 590, *et seq; Bank v. Bogart* 81 N. Y., 101; *Dambmann v. Schulting,* 75 N. Y., 55; *Hardley v. Im orling Co.,* 13 Ohio St., 502, at p., 513; *General Ch.,* pp., 88, 89, 90; 1 *Bigelow on Fraud,* '88 Ed., 560; *Ruthford v. Williams,* 42 Mo., 18; *Atwood v. Small,* 6 Clark and Fin., at pp., 446, 447; *Mulvey v. King,* 39 Ohio St., 491; *Smith v. Bowler,* 1 Disn., 520; (affirmed, 2 Disn., 153,) ; 1 *Bigelow on Fraud,* 88 Ed., 549 and 548; *Morris v. Talcott* 96 N. Y., 100, *per Ruger, C. J.; Fogg v. Pew,* 10 Gray, 409, at p., 415; *Wald's Pollock on Contracts* p., 534, citing; *McCracken v. West,* 17 Ohio, 16; *Way v. Hearn,* 13 C. B., N. S., 292; *Peck v. Gurney,* L. R., O. H. L., 377; *Wald's Pollock,* 535; *Kerr on Fraud and Mistake,* p., 93.

*Wilby & Wald,* for Defendant in Error, cited: *Miller v. Woods,* 21 Ohio St., 485; *Bebout v. Bodle,* 38 Ohio St., 500; *Woolen Mills v. Titus,* 35 Ohio St., 253; *Edgington v. Fitz Maurice,* 29 Ch. D., at 483; *Barrett v. Hart,* 42 Ohio St., 41, 44; *Coal Co. v. Davenport,* 37 Ohio St., 194; *Barrett v. Hart,* 42 Ohio St., 41; *McCormick v. Joseph* 77 Ala., 236; *Mulvey v. King,* 39 Ohio St., 491 at 494; *Benton v. Ward,* 47 Fed. Rep., 253, 256; *Wilcox v. University,* 32 Ia., at top, 374; *Brooks v. Hamilton,* 15 Minn., 26 at p., 33; *Lanier v. Hill,* 25 Ala., at bot., 558; *Da Lee v. Blackburn,* 11 Kan., 190 at 205; *Newbigging v.*

*Adam,* 34 Ch. D., 582; 13 App. Ca., 308; *Karbergs cases,* 92, 3 Ch., 1, 11, 12, 13; *Smith v. Richards,* 83 U. S., (13 Pet.), 26; *Hammond v. Pennock,* 61 N. Y., 145 at p., 152; 1 *Story on Eq. Jur., sec.* 193 *and cases cited; Perry on Trusts,* sec. 171; *Derry v. Peek,* 14 App. Cases, 1889; *Trail v. Baring,* 4 D. J. S., 329; *Mooney v. Davis, Assignee,* 75 Mich., 188; *Am. and Eng. Ency. Law,* Vol., 11, 376; *Aetna Ins. Co. v. Reed,* 33 Ohio St., 283 at 294; *Beach v. Bemis,* 107 Mass., 498, 499; *Beebe v. Knapp,* 28 Mich., 53; *Stone v. Covell,* 29 Mich., 359; *Ford v. McComb,* 12 Bush., 723; *Munroe v. Pritchett,* 16 Ala., 785, 790; *Einstcin v. Marshall,* 58 Ala., 153; *Sims v. Eiland,* 57 Miss., 607; *Bushind v. Barrington,* 36 Minn., 320; *Middleton v. Jerdee,* 73 Wis., 39; *Cooper v. Schlesinger,* 111 U. S., 148, 155; *Nevada Bk. v. Portland Nat. Bk.,* 59 Fed. Rep., 338; *Matthews v. Bliss,* 22 Pick., 48; *Safford v. Grant,* 120 Mass., 20 at page 25; *Morgan v. Skiddy,* 62 N. Y., 319; *Pollock on Contracts,* Wald's 2d. Ed., 528; *Central Ry. Co. v. Kish,* L. R. 2, H. L. 99; *David v. Park,* 103 Mass., 501; *Mead v. Bunn,* 32 N. Y., 275-280; *Roberts v. Plaisted,* 63 Me., 335; *Upton v. Englehart,* 3 Dill., 496-501; *Eaton v. Winnie,* 20 Mich., 156; *McClelland v. Scott,* 24 Wis., 81; *Risch v. Von Lilienthal,* 34 Wis., 250; *Matlock v. Todd,* 19 Ind., 130; *Wannell v. Kem,* 57 Mo., 478; *Caldwell v. Henry,* 76 Mo., 254; *Bank, v. Hunt,* 76 Mo., 439; *Carmichael v. Vandebur,* 50 Ia., 651; *Porter v. Fletcher,* 25 Minn., 493; *Olson v. Orton,* 28 Minn., 36; *McKee v. Eaton,* 26 Kan., 226; *Morris v. Talcott,* 96 N. Y., 100; *Fogg v. Pugh,* 10 Gray, 4-9; *Way v. Hearn,* 13 C. B. N. S., 292; *Wells v. Cook,* 16 Ohio St., 67.